UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TYRONE J. LLOYD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08CV3059 PH |
| | ) | |
| v. | ) | Judge Guzman |
| | ) | Magistrate Judge Cox |
| FORD MOTOR COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF FORD MOTOR COMPANY'S
MOTION TO DISMISS**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Ford Motor Company ("Ford") submits

this Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint.

**I.    INTRODUCTION**

Plaintiff Tyrone Lloyd ("plaintiff"), contends that Ford discriminated against him on the

basis of his race and retaliated against him for filing a 1998 lawsuit against Ford.  He advances

claims under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 2000e,

et seq.  As discussed below, plaintiff's claims are barred by the applicable statutes of limitations,

administrative prerequisites to suit and/or a settlement agreement enterred into between plaintiff

and Ford.

**II.    FACTS ALLEGED**

Plaintiff, an African-American male, claims that he was subject to disparate treatment

and retaliation based on his race.  *See* Complaint.  More specifically, he claims that, nearly ten

years ago, in 1999, he bid on and was denied a position as a lift-truck operator and that the

position was given to a Caucasian male.  Complaint ¶¶ 6-10, 28-31, 53-56, and 77-79.  He also

contends that, five years later, in February 2004, he bid for the position/classification of "welder-

repair." Complaint ¶¶ 12-17, 32-36, 57-61, 80-87. He claims that he was not selected for the welder-repair job while a Caucasian male, E.E. Rosine, with less seniority was given the job. *Id.* On March 16, 2004, plaintiff filed a grievance through his Union contending that the selection of Mr. Rosine for the position was wrongful and seeking to be placed into the classification of welder repair. *Id.*

Plaintiff filed a charge of discrimination with the EEOC on March 3, 2008. Seven days later, on March 11, 2008, the EEOC issued a notice of right to sue finding no probable cause to conclude that Ford had engaged in any unlawful conduct. Complaint ¶ 46; Copy of Charge and notice of right to sue attached as Exhibit A.[1] Plaintiff filed this lawsuit on May 27, 2008.

## III.    ARGUMENTS AND AUTHORITY

### A.    Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint. *Zurich Capital Markets, Inc. v. Coglianese*, 228 F.Supp.2d 847, 855 (N.D. Ill. 2004). Dismissal is proper when, viewing the complaint most favorably to the plaintiff, it appears the plaintiff can prove no set of facts that support the claim. *Id.* That standard is met in this case.

### B.    Count II of Plaintiff's Complaint Must be Dismissed for Failure to Exhaust Administrative Remedies.

Count II of plaintiff's Complaint alleges discrimination based on race in violation of Title VII. Complaint ¶¶ 44-65. It is axiomatic that an employee wishing to pursue claims under Title VII in court must first exhaust his administrative remedies before the EEOC or the analogous state agency. In order to do so, the plaintiff must file a charge of discrimination within 300 days

---

[1] A moving party may attach to a motion to dismiss documents referred to in the Complaint without converting it to a motion for summary judgment. *See, e.g., 188 LLC v. Trinity Industries, Inc.,* 300 F.3d 730 (7th Cir. 2002) (restating rule that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in plaintiff's complaint and are central to his claim, and may be considered by district court in ruling on motion to dismiss).

of the alleged discriminatory act.  42 U.S.C. § 2000e-5(e); 29 C.F.R. § 1601.13(a)(3).[2]  If the plaintiff does not do so, his claim is time-barred and he may not recover.  *See Ledbetter v. Goodyear Tire, Inc.,* 127 S.Ct. 2162 (2007).  Discriminatory acts are "not actionable if time-barred, even when they are related to acts alleged in timely-filed charges."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-11, 113 (2002).  A plaintiff cannot bring a claim or advance a basis of discrimination in a lawsuit that was not alleged in the charge.  *See Cheek v. W. & Southern Life Ins., Co.,* 31 F.3d 497, 500 (7th Cir. 1994) (internal citation omitted).  This requirement provides the employer with notice of the particular challenged conduct and provides the opportunity for settlement of the dispute.  *Id.*

Plaintiff filed his Charge on March 3, 2008.  Nowhere in his Charge does plaintiff mention race, much less assert that race was a factor in the alleged unlawful conduct described therein.  Indeed, when required by the Charge to specifically choose the "box" which reflected the type of discrimination alleged, plaintiff checked ***only*** the retaliation box, not race.  Exhibit A.  In the body of the Charge, plaintiff again referred only to retaliation and not to race discrimination stating, "I engaged in protected activity," and, "I believe I have been retaliated against, in violation of Title VII of the Civil Rights Act of 1964, as amended."  Exhibit A.

Because plaintiff failed to refer to race or otherwise denote that race was a factor in the alleged discriminatory conduct set forth in his Charge, he has not exhausted his administrative remedies as to Count II and that Count must be dismissed.  *See Graham v. AT&T*, 2007 WL 2565999 * (7th Cir. 2007)[3] (checking "retaliation box" insufficient to exhaust remedies as to claims of race discrimination); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002) (affirming district court's finding that the plaintiff's failure to transfer claim was not

---

[2] Illinois is a "deferral" state.

[3] Copy of opinion attached as Exhibit B.

properly before the court because the plaintiff only alleged discriminatory discharge in his

charge).

### C.     Counts I and III are Similarly Barred by the Applicable Statute of Limitations.

Counts I and III of plaintiff's Complaint (race discrimination and retaliation under 42

U.S.C. § 1981 respectively) are similarly barred.

### 1.     Plaintiff's Section 1981 Claims Are Subject to a Four-Year Statute of Limitations.

Claims brought under Section 1981 are subject to a four-year statute of limitations.  *See*

*Jones v. R.R. Donnelly & Sons Co.,* 541 U.S. 369 (2004) (applying four-year statute of

limitations to § 1981 claims).  Plaintiff filed his Complaint on May 27, 2008.  As such, any and

all claims based on conduct occurring on or before May 27, 2004 are time-barred.  *Id.*

### 2.     Plaintiff's 1999 Failure to Promote Claims Are Barred.

In his Complaint, plaintiff claims that he was discriminated against when he was denied a

promotion in 1999.  Complaint ¶¶ 6-10, 28-31, and 77-79.  Obviously any such claims are barred

by the four-year statute of limitations and must be dismissed.

### 3.     Plaintiff's 2004 Failure to Promote Claims Are Barred And There is No Other Actionable Conduct Alleged in the Complaint.

Plaintiff goes on to allege that he was denied a promotion to the welder-repair

classification in February 2004 and that a less-qualified Caucasian male (E.E. Rosine) was

promoted over him.  Complaint ¶¶ 32-36.  This is the last specific act of discrimination set forth

in the Complaint.  Indeed, plaintiff's Complaint admits that he was on notice of this alleged

discriminatory act no later than March 16, 2004 when he filed a grievance over the selection of

Mr. Rosine for the position plaintiff sought.  Complaint ¶ 84.  Plaintiff's Complaint was not filed

within four years of the February 2004 failure to promote or even his March 2004 grievance challenging the denied promotion and as such is time-barred. *Jones,* 541 U.S. 369.

Plaintiff goes on to allege in his Complaint that Ford then failed to promote him to the welder-repair operator at any time following the original February 2004 failure to promote. However, he fails to allege anywhere in his Complaint that there was ever another opening in that classification to which he could have been promoted, much less that he applied for such a position or that a less qualified individual outside of his protected class was selected for it. *See Fischer v. Avanade, Inc.,* 519 F.3d 393 (7th Cir. 2008) (setting forth the requirements for a prima facie case based on failure to promote). Indeed, the only opening referred to in the Complaint is the one existing in February 2004 which, as noted, falls outside of the limitations period.

This case bears a striking resemblance to the very recent decision in *Mull v. Abbot Laboratories,* 2008 WL 2596664 (N.D. Ill. June 30, 2008)[4]. In *Mull,* the plaintiff was refused a promotion in July 2005. She filed a charge of discrimination in September 2006, more than 300 days later.[5] *Id.* In order to overcome the obvious time-bar to her claims, plaintiff argued that her employer could have promoted her at any time following the initial denial of the promotion and therefore her charge was timely as she had never been promoted. The court rejected her position, noting that the continuing violation doctrine had no application to discrete acts of discrimination such as failure to promote and that the alleged continued failure to promote the plaintiff was insufficient to overcome the limitations bar. *Id.* at *3 *citing Morgan,* 536 U.S. 101, 114-15,

---

[4] Copy of opinion attached as Exhibit C.

[5] While employees need not exhaust Title VII administrative pre-requisites before bringing § 1981 claims, the same analysis as to when a cause of action accrues and whether it is timely is applicable under both Title VII & § 1981. *See, e.g. Dandy v. United Parcel Service,* 388 F.3d 263, 270 (7th Cir 2004) (noting that the "continuing violation" doctrine applies to both causes of action).

(holding that failures to promote are discrete acts, actionable when they occur).  The same result is appropriate here.

> **D.    To the Extent Not Otherwise Barred, Plaintiff has Also Waived and Released any Claims Against Ford Arising Prior to March 26, 2001 Through Execution of a Settlement Agreement and Release.**

Should the Court somehow find that plaintiff's 1999 failure to promote claims are timely, which it should not, those claims are also barred as plaintiff entered into a valid and binding settlement agreement with Ford on March 26, 2001, in which he agreed to waive and release any and all claims (other than a pending workers' compensation matter) against Ford arising out of "any act or omission committed by the [Ford] prior to the date hereof. . ."  Copy of release attached as Exhibit D, ¶¶ 2, 4.[6]  The release specifically states that it releases Ford from claims brought under Title VII or § 1981.[7]  Exhibit D ¶ 3.  As such, plaintiff has waived and releases any claims regarding the alleged 1999 failure to promote as well as any and all other claims arising out of conduct pre-dating the date of the release.  *See, e.g.*, *Constant v. Continental Tel. Co.,* 745 F. Supp. 1374, 1380 (N.D. Ill. 1990) (enforcing release to bar discrimination claims); *Wagner v. Nutrasweet Co.,* 95 F.3d 527, 530 (7th Cir. 1996) (same).

## IV.    CONCLUSION

Plaintiff's entire Complaint is subject to dismissal as each discrete act of discrimination alleged is barred by the applicable statute of limitations, the failure to exhaust administrative prerequisites or a prior settlement agreement and release of claims.

---

[6] As with the Charge of Discrimination, the Release is referred to in the Complaint and can be considered by the Court without converting this motion to a motion for summary judgment.

[7] Ford notes that plaintiff has breached the confidentiality provisions of the settlement Agreement by reciting the amount of consideration in his Complaint.  Exhibit D ¶¶ 5, 6, and 7.

BERKOWITZ OLIVER WILLIAMS
SHAW & EISENBRANDT LLP


By:     s/ Kathleen M. Nemechek
  Kurt D. Williams, IL # 6202137
  Kathleen M. Nemechek (pro hac vice)
  2600 Grand Boulevard, Suite 1200
  Kansas City, Missouri 64108
  Telephone: 816-561-7007
  Facsimile: 816-561-1888

Attorneys for Defendant Ford Motor Company


FREEBORN & PETERS, LLP
  R. Delacy Peters Jr.
  311 South Wacker Drive
  Suite 3000
  Chicago, Illinois 60606
  Telephone: 312-360-6434
  Facsimile: 312-360-6594

Attorneys For Defendant


## CERTIFICATE OF SERVICE

   I hereby certify that on August 14. 2008, the foregoing was filed electronically with the Clerk of the court to be served by operation of the court's electronic filing system upon the following:

   Yao O. Dinizulu
   Dinizulu Law Group, Ltd.
   203 N. LaSalle St., Suite 2100
   Chicago, IL 60601
   Attorney for Plaintiff


     s/ Kathleen M. Nemechek
   Attorney for Defendant Ford Motor Company

# EXHIBIT A

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form | ☐ FEPA  ☒ EEOC | 440-2008-03544 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Tyrone J. Lloyd | (708) 748-9165 | 02-19-1965 |

Street Address                    City, State and ZIP Code

2524 Athens Rd., Olympia Fields, IL 60461

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| FORD MOTOR COMPANY | 500 or More | (708) 757-5700 |

Street Address                    City, State and ZIP Code

1000 East Lincoln Highway, Chicago Heights, IL 60411

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
|  |  |  |

Street Address                    City, State and ZIP Code

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
|  | Earliest          Latest |

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

Earliest **09-01-2004**     Latest **11-30-2007**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began my employment with the above named Respondent on August 26, 1991. My current position is Fork Driver. I engaged in protected activity. On or about November 2007, I was notified I would not be promoted.

I believe that I have been retaliated against, in violation of Title VII of the Civil Rights Act of 1964, as amended.

RECEIVED EEOC

MAR 03 2008

CHICAGO DISTRICT OFC

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Mar 03, 2008          _signature_ | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | |

EEOC Form 161 (2/08)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Tyrone J. Lloyd<br>2524 Athens Rd.<br>Olympia Fields, IL 60461<br><br>CERTIFIED MAIL 7000 1670 0012 6742 8025 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2800<br>Chicago, IL 60661 |

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
| --- | --- | --- |
| 440-2008-03544 | Luis Rodriguez,<br>Investigator | (312) 353-0893 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

## - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

_John P. Rowe_       _3-11-08_

Enclosures(s)                  John P. Rowe,             (Date Mailed)
                                       **District Director**

cc:     FORD MOTOR COMPANY

# EXHIBIT B

Westlaw.

247 Fed.Appx. 26
247 Fed.Appx. 26, 2007 WL 2565999 (C.A.7 (Ill.))
**(Not Selected for publication in the Federal Reporter)**
**247 Fed.Appx. 26, (C.A.7 (Ill.))2007 WL 2565999**

**H**
Graham v. AT&T Mobility, LLC
C.A.7 (Ill.),2007.
This case was not selected for publication in the
Federal Reporter.Not for Publication in West's Fed-
eral Reporter See Fed. Rule of Appellate Procedure
32.1 generally governing citation of judicial de-
cisions issued on or after Jan. 1, 2007. See also
Seventh Circuit Rule 32.1. (Find CTA7 Rule 32.1)
United States Court of Appeals,Seventh Circuit.
Christopher GRAHAM, Plaintiff-Appellant,
v.
AT&T MOBILITY, LLC, Defendant-Appellee.
**Nos. 06-3020, 06-3734.**

Argued May 23, 3007.
Decided Sept. 6, 2007.

**Background:** African-American employee brought
action against his employer, alleging race discrim-
ination, retaliation, and hostile work environment
claims under Title VII. Employer moved for sum-
mary judgment. The United States District Court
for the Northern District of Illinois, Elaine E. Buck-
lo, J., 435 F.Supp.2d 817, granted motion. Employ-
ee filed motion to reconsider. The District Court
denied motion. Employee appealed.

**Holdings:** The Court of Appeals held that:
(1) employee failed to satisfy prerequisite of al-
leging discrimination claim in Equal Employment
Opportunity Commission (EEOC) charge form;
(2) manager's comment to another employee could
not serve as basis for employee's retaliation claim
against employer;
(3) employee was required to set forth similarly
situated individuals who were treated more fairly in
order to sustain retaliation claim;
(4) employee failed to develop pattern and practice
claims; and
(5) award of costs to employer was not abuse of
discretion.

Affirmed.

Page 1

West Headnotes

**[1] Civil Rights 78 ⟲1516**

78 Civil Rights
    78IV Remedies Under Federal Employment Dis-
crimination Statutes
        78k1512 Exhaustion of Administrative Rem-
edies Before Resort to Courts
            78k1516 k. Scope of Administrative Pro-
ceedings; Like or Related Claims. Most Cited Cases
African-American employee failed to satisfy pre-
requisite of alleging discrimination claim in Equal
Employment Opportunity Commission (EEOC)
charge form, and thus, employee could not allege
discrimination claims under Title VII against em-
ployer; employee checked only "retaliation" box on
his EEOC charge form and also specifically stated
on his form that he was discriminated against be-
cause of retaliation. Civil Rights Act of 1964, § 701
et seq., 42 U.S.C.A. § 2000e et seq.

**[2] Civil Rights 78 ⟲1246**

78 Civil Rights
    78II Employment Practices
        78k1241 Retaliation for Exercise of Rights
            78k1246 k. Particular Cases. Most Cited
Cases
Manager's comment to another employee that "they
might suspect you for the vandalism and theft on
employer's property because you have a tan" could
not serve as basis for African-American employee's
retaliation claim under Title VII against employer
as direct method of proof, where African-American
employee was not present when comment was
made nor did comment refer to him. Civil Rights
Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et
seq.

**[3] Civil Rights 78 ⟲1246**

78 Civil Rights
    78II Employment Practices
        78k1241 Retaliation for Exercise of Rights

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

247 Fed.Appx. 26
247 Fed.Appx. 26, 2007 WL 2565999 (C.A.7 (Ill.))
**(Not Selected for publication in the Federal Reporter)**
**247 Fed.Appx. 26, (C.A.7 (Ill.))2007 WL 2565999**

Page 2

78k1246 k. Particular Cases. Most Cited Cases
African-American employee asserting retaliation claim under Title VII against employer was required to set forth similarly situated individuals who were treated more fairly in order to sustain retaliation claim. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[4] Federal Courts 170B ⟨⟩915**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)7 Waiver of Error in Appellate Court
                170Bk915 k. In General. Most Cited Cases
African-American employee failed to develop pattern and practice claims in discrimination suit under Title VII against employer, and thus employee waived his right to assert claims; employee failed to elucidate which alleged discriminatory acts in his case constituted a pattern and practice of discrimination, and did not provide any argument beyond his conclusory statement that a fact finder was necessary to resolve claim. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[5] Federal Civil Procedure 170A ⟨⟩2655**

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(G) Relief from Judgment
            170Ak2651 Grounds
                170Ak2655 k. Further Evidence or Argument. Most Cited Cases
Reconsideration of African-American employee's discrimination claims under Title VII against employer based on change in legal standard was unnecessary, where Supreme Court adopted same standard applied by district court in employee's action. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Fed.Rules Civ.Proc.Rule 60(b)(6), 28 U.S.C.A.

**[6] Civil Rights 78 ⟨⟩1584**

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1584 k. Costs. Most Cited Cases
Award of costs to employer on African-American employee's discrimination and retaliation claims under Title VII was not abuse of discretion, although employee claimed that award would deter reasonable worker from making or supporting charge of discrimination; employer's costs were reasonable. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Fed.Rules Civ.Proc.Rule 54(d), 28 U.S.C.A.

*27 Appeals from the United States District Court for the Northern District of Illinois, Eastern Division. No. 05 C 0994. Elaine E. Bucklo, Judge.
Salem Law Office, Palos Heights, IL, for Plaintiff-Appellant.
Jane M. McFetridge, Fisher & Phillips, Chicago, IL, for Defendant-Appellee.

Before Hon. FRANK H. EASTERBROOK, Chief Judge, Hon. WILLIAM J. BAUER, Circuit Judge and Hon. DANIEL A. MANION, Circuit Judge.

**ORDER**

**1 Christopher Graham sued his employer, AT&T Mobility, LLC ("AT&T"), [FN1] for race discrimination and retaliation. After granting AT&T's motions to dismiss, in part, and granting AT&T's summary judgment motion, the district court dismissed Graham's case. Graham appeals, and we affirm.

> FN1. Graham's employer at the time he filed suit was Cingular Wireless, LLC. Cingular has been renamed AT&T Mobility LLC, and we refer to the defendant by its current name.

I.

Christopher Graham, who is black, works as a wire-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

247 Fed.Appx. 26
247 Fed.Appx. 26, 2007 WL 2565999 (C.A.7 (Ill.))
(Not Selected for publication in the Federal Reporter)
247 Fed.Appx. 26, (C.A.7 (Ill.))2007 WL 2565999

less technician for AT&T. In 2003, Graham filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that AT&T retaliated and discriminated against him at work because of his race. After receiving a right to sue letter from the EEOC, Graham filed suit against AT&T alleging racial discrimination in violation of Title VII, 42 U.S.C. § 2000e, et seq. After the district court dismissed Graham's complaint in March 2004, Graham appealed to this court, but filed his appeal over a year late, and therefore we dismissed the appeal for lack of jurisdiction. *See Graham v. AT&T Wireless, LLC,* No. 05-1370 (7th Cir. Sept. 14, 2005).

**\*28** In November 2004, Graham filed another EEOC charge alleging that AT&T retaliated against him for filing his 2003 EEOC charge. Specifically, Graham stated that AT&T retaliated against him by giving him a negative evaluation, directing him to send e-mails to his district manager and his work group about his job progress, denying him the opportunity to have a union representative with him during a meeting regarding his evaluation, and making defamatory statements to his personal injury attorney. Other specific acts Graham listed on his charge form in support of his retaliation claim were that an AT&T manager made a racist comment in the presence of another employee, and the placement of a sign in his work area stated "built by Irish crew." After receiving a right to sue letter, Graham filed the present case alleging that AT&T violated Title VII through a pattern and practice of discrimination and by discriminating and retaliating against him for filing his first lawsuit. AT&T filed a motion seeking dismissal of the retaliation claim in part and the race discrimination and pattern and practice claims in their entirety. The district court granted AT&T's motion, ruling that Graham's 2004 EEOC charge was only based on retaliation, that there was no suggestion in his November 2004 EEOC form that "Graham had felt discriminated against because of his race," and that the discrimination and pattern and practice claims were outside the scope of his 2004 EEOC charge.

On November 1, 2005, Graham then filed an additional EEOC charge realleging the dismissed discrimination allegations as well as claims of retaliation and discrimination that took place in 2004 and 2005. Following Graham's receipt of another right to sue letter, the district court granted Graham's motion for leave to file an amended complaint in which he set forth discrimination, retaliation, and pattern and practice claims. AT&T moved to dismiss as untimely the race discrimination claim asserted in the amended complaint and to strike other allegations as barred by res judicata because Graham presented them in his first case. Granting the motion in part, the district court ruled that any allegations that were within the scope of Graham's first suit were barred by res judicata and that Graham could only raise acts occurring within 300 days of his second EEOC charge.

**\*\*2** AT&T then filed a motion for summary judgment, which the district court granted concluding that Graham had failed to establish that he suffered an adverse employment action or that there were similarly situated employees outside of his protected class who were treated more favorably. Graham filed a motion for reconsideration, which the district court denied, and he now appeals.

II.

Graham asserts five main arguments on appeal: First, he argues that the district court erred in dismissing his discrimination claims because his failure to check the "race" box on the 2004 EEOC charge form was a clerical error. Next, he argues that a genuine issue of material fact exists in relation to his retaliation claim. Graham also asserts that a genuine issue of material fact exists regarding his pattern and practice claim. Fourth, Graham contends that the district court misapplied the Supreme Court's holding in *Burlington Northern & Santa Fe Railway v. White,* 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). In his fifth and final argument, Graham asserts that the bill of costs the district court awarded to AT&T should be stricken because

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

247 Fed.Appx. 26
247 Fed.Appx. 26, 2007 WL 2565999 (C.A.7 (Ill.))
(Not Selected for publication in the Federal Reporter)
247 Fed.Appx. 26, (C.A.7 (Ill.))2007 WL 2565999

it will have a chilling and deterrent effect upon in-
dividuals who *29 wish to bring discrimination
claims. We address each of these claims in turn.FN2

> FN2. We address Graham's claims only to
> the extent that these arguments have been
> presented by his attorney in his briefs and
> at oral argument. We make particular note
> of this because the written submissions
> presented on Graham's behalf contain no
> citations to the record, are scant on cita-
> tions to authorities, and contain an inad-
> equate jurisdictional statement and an in-
> adequate statement of the case in contra-
> vention of Federal Rules of Appellate Pro-
> cedure 28(a)(9)(A), 28(a)(6), and 28(a)(2).
> It is not the duty of this court to scour the
> record to compensate for inadequate brief-
> ing or to make a party's argument, particu-
> larly when the party is represented by
> counsel as in this case. *See Albrechtsen v.
> Bd. of Regents of the Univ. of Wisc. Sys.,*
> 309 F.3d 433, 436 (7th Cir.2002) (citations
> omitted); *United States v. McLee,* 436 F.3d
> 751, 760 (7th Cir.2006) (citations omitted).

[1] Graham contends that the district court improp-
erly dismissed all but his retaliation claims because
he checked only the "retaliation" box and not the
"discrimination" box on his 2004 EEOC charge
form. This court reviews de novo a district court's
grant of a motion to dismiss. *Payton v. County of
Carroll,* 473 F.3d 845, 847 (7th Cir.2007) (citation
omitted). A plaintiff generally cannot bring a claim
in a lawsuit that was not alleged in the EEOC
charge, and, while not a jurisdictional element, it is
a prerequisite with which a plaintiff must comply
before filing suit. *Cheek v. W. & Southern Life Ins.
Co.,* 31 F.3d 497, 500 (7th Cir.1994) (citations
omitted). This provides the employer with notice
about the particular challenged conduct and
provides an opportunity for settlement of the dis-
pute. *Id.* (citations omitted). A plaintiff, however,
may proceed on a claim not explicitly mentioned in

his EEOC charge "if the claim is like or reasonably
related to the EEOC charges, and the claim in the
complaint reasonably could be expected to grow
out of an EEOC investigation of the charge."
*Peters v. Renaissance Hotel Operating Co.,* 307
F.3d 535, 551 (7th Cir.2002) (internal quotations
and citations omitted). At the very least, these
claims must involve the same conduct and implic-
ate the same individuals. *Id.* (citations omitted).
While the conduct that served as the basis for Gra-
ham's discrimination claim was the same conduct
that served as the basis for his retaliation claim,
Graham checked only the "retaliation" box on his
2004 EEOC charge form and also specifically
stated on his form that he was "discriminated
against because of retaliation." There is no sugges-
tion in the 2004 charge that Graham was asserting
that he was discriminated against because of his
race. Therefore, Graham failed to satisfy the pre-
requisite of alleging a discrimination claim in his
2004 EEOC charge form. Accordingly, the district
court did not err in dismissing Graham's discrimin-
ation claims based on his 2004 EEOC charge form.

**3 We next address Graham's claims on which the
district court granted AT&T summary judgment.
We review a district court's grant of summary judg-
ment de novo. *Vallone v. CNA Fin. Corp.,* 375 F.3d
623, 631 (7th Cir.2004) (citation omitted). All reas-
onable inferences from the evidence are drawn in
the light most favorable to the non-moving party. *Id.*

Title VII prohibits an employer from discriminating
against an employee because of his race and from
punishing an employee for complaining about dis-
crimination. 42 U.S.C. §§ 2000e-2 and 2000e-3(a).
A plaintiff may prove a retaliation or a discrimina-
tion claim through the direct or indirect method.
*Sun v. Bd. of Tr. of Univ. of Ill.,* 473 F.3d 799, 812
(7th Cir.2007); *Moser v. Ind. Dep't of Corr.,* 406
F.3d 895, 903 (7th Cir.2005). To prove retaliation,

> *30 [t]he direct method requires the plaintiff to
> show that: (1)[he] engaged in statutorily protec-
> ted activity; (2)[he] suffered an adverse employ-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

247 Fed.Appx. 26
247 Fed.Appx. 26, 2007 WL 2565999 (C.A.7 (Ill.))
(Not Selected for publication in the Federal Reporter)
247 Fed.Appx. 26, (C.A.7 (Ill.))2007 WL 2565999

Page 5

ment action taken by the employer; and (3) a causal connection between the two. Under the alternative indirect method, the plaintiff must establish a prima facie case of retaliation by showing that: (1)[he] engaged in a statutorily protected activity; (2)[he] met the employer's legitimate expectations; (3)[he] suffered an adverse employment action; and (4)[he] was treated less favorably than similarly situated employees who did not engage in statutorily protected activity.

*Moser,* 406 F.3d at 903 (citation omitted). A similarly situated employee is one who is "comparable to plaintiff in all material respects,"*Crawford v. Ind. Harbor Belt R.R. Co.,* 461 F.3d 844, 846 (7th Cir.2006). "Failure to satisfy any one element of the prima facie case is fatal to an employee's retaliation claim." *Sublett v. John Wiley & Sons, Inc.,* 463 F.3d 731, 740 (7th Cir.2006) (quoting *Hudson v. Chicago Transit Auth.,* 375 F.3d 552, 560 (7th Cir.2004)). If the plaintiff establishes a prima facie case, then the burden shifts to the defendant to present evidence of a legitimate, nondiscriminatory reason for its actions. *Id.* If the defendant makes that showing, then the burden shifts back to the plaintiff to show that the defendant's reason is pretext, i.e., a "lie" or "phony reason" for the action. *Perez v. Ill. Dep't of Corr.,* 488 F.3d 773, 776 (7th Cir.2007) (citation omitted).

[2] Graham asserts that he raised a genuine issue of material fact regarding his retaliation claim. Specifically, from his 2004 EEOC charge Graham cites his receipt of derogatory performance reviews and being required to e-mail his supervisors and work group about his job progress. From his 2005 EEOC charge, Graham cites being denied training, having a delay in receiving a laptop mount, and being passed up for promotions. Also as evidence that AT&T retaliated against him, Graham cites a comment a manager made in the presence of another employee for which Graham was not present. [*id.* at 17-18] While Graham does not set forth the governing standard for a retaliation claim, based on the claims themselves, the only claim he could possibly

make under the direct method was the manager's comment to another employee that "they might suspect you [for the vandalism and theft on AT&T's property] because you have a tan." This comment was not made in Graham's presence nor did it refer to Graham. Therefore, this comment could not could not serve as a basis for Graham's retaliation claim.

**4 [3] As to the remaining facts Graham cites, it appears that he is attempting to proceed under the indirect method of proof. Graham, as a black person, is a member of a protected class who engaged in protected activity by filing an EEOC charge. Even assuming one or more of Graham's claims amounts to an adverse employment action, he fails to set forth any similarly situated individuals who were treated more favorably. While Graham states that "similarly situated (white) employees" were not required to communicate with supervisors throughout the day, he does not identify who those employees are and explain why they are similarly situated. For the remaining claimed retaliatory actions, Graham does not assert the existence of any similarly situated individuals. Therefore, the district court properly awarded summary judgment in favor of AT&T on Graham's retaliation claim.

[4] Graham also argues that the district court improperly granted summary judgment on his pattern and practice claims. We find that Graham has waived *31 his right to assert his pattern and practice claim by failing to develop these arguments. *See United States v. Lanzotti,* 205 F.3d 951, 957 (7th Cir.2000) (citing *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir.1991)) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)."). Specifically, Graham fails to elucidate which alleged discriminatory acts in his case constitute a pattern and practice of discrimination or any issues of material fact that would make summary judgment inappropriate. He also does not

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

247 Fed.Appx. 26
247 Fed.Appx. 26, 2007 WL 2565999 (C.A.7 (Ill.))
(Not Selected for publication in the Federal Reporter)
247 Fed.Appx. 26, (C.A.7 (Ill.))2007 WL 2565999

provide any argument beyond his conclusory statement that a fact finder is necessary to resolve this claim. As we have noted, "[t]his court is not obligated to research and construct legal arguments open to parties, especially when they are represented by counsel as in this case." *John v. Barron*, 897 F.2d 1387, 1393 (7th Cir.1990) (citations omitted). Accordingly, we affirm the district court's grant of summary judgment to AT&T on the pattern and practice claim.

[5] We now turn to Graham's contention that the district court misapplied *Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). After the district court granted AT&T's motion for summary judgment, Graham filed a motion for reconsideration pursuant to Federal Rule of Civil Procedure 60(b)(6) requesting the district court to reconsider its summary judgment ruling in light of the United States Supreme Court opinion in *White*. *White*, however, settled a circuit split on retaliation claims, but in doing so agreed with the approach already employed by the Seventh Circuit. *Id.* at 2415 ("We agree with the formulation set forth by the Seventh and the District of Columbia Circuits. In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.") (internal quotations and citations omitted). Just as before the district court, Graham does not demonstrate how the district court improperly applied *White* to his case, particularly because the standard adopted by the Supreme Court in *White* was already the standard in this circuit. Reconsideration in light of this case was therefore unnecessary because no change in the legal standard occurred. Accordingly, the district court did not abuse its discretion in denying Graham's motion for reconsideration, and we affirm its denial of Graham's motion

**5 [6] Graham also cites *White* in support of his challenge of the district court's grant of bill of costs

to AT&T. Specifically, Graham argues that the $7,845.23 in costs awarded to AT&T will "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2409. We review a district court's imposition of costs pursuant to Federal Rule of Civil Procedure 54(d) for abuse of discretion. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir.1999). This "discretion is 'narrowly confined' because of the strong presumption created by [Rule 54] that the prevailing party will recover costs." *Contreras v. City of Chicago*, 119 F.3d 1286, 1295 (7th Cir.1997) (citation omitted). Other than arguing that the award of these costs will have a deterrent effect, Graham does not challenge the reasonableness of the amount of costs or allege that AT&T conducted itself in such a manner as to ring up unnecessarily the costs incurred. AT&T took only five depositions, even with Graham's identification of over 100 witnesses in his Rule 26 disclosures,*32 and Graham took twelve depositions. AT&T further attempted to limit the scope of litigation by filing two motions to dismiss. Accordingly, based on Graham's unpersuasive rationale and the reasonableness with which AT&T conducted this litigation, the district court did not abuse its discretion in awarding AT&T costs, and we therefore affirm its grant of costs to AT&T.

### III.

Because Graham has failed to establish that the district court improperly dismissed his discrimination claims based on his 2004 EEOC charge form, the existence of a genuine issue of material fact on his retaliation and pattern and practice claims, that the district court improperly applied *White*, or that the district court abused its discretion in granting AT&T costs, we AFFIRM.

C.A.7 (Ill.),2007.
Graham v. AT&T Mobility, LLC
247 Fed.Appx. 26, 2007 WL 2565999 (C.A.7 (Ill.))

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

Westlaw.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 2596664 (N.D.Ill.)
**2008 WL 2596664 (N.D.Ill.)**

Page 1

Mull v. Abbott Laboratories
N.D.Ill.,2008.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern
Division.
Beverly A. MULL, Plaintiff,
v.
ABBOTT LABORATORIES, Defendant.
**No. 07 C 6965.**

June 30, 2008.

**Background:** African-American employee brought
Title VII action against former employer, alleging
that employer demoted her, failed to promote her,
and wrongfully discharged her on the basis of her
race. Employer moved to dismiss.

**Holdings:** The District Court, Ruben Castillo, J.,
held that:
(1) employer's alleged failure to promote employee
at any time until such time as her termination was
not a continuing violation;
(2) employee stated wrongful discharge claim; and
(3) employee stated retaliation claim.

Motion granted in part and denied in part.

**[1] Civil Rights 78 ☞1119**

78 Civil Rights
    78II Employment Practices
        78k1119 k. Adverse Actions in General.
Most Cited Cases
An "unlawful employment practice" under Title VII
includes various discrete acts such as termination,
failure to promote, denial of transfer, or refusal to
hire. Civil Rights Act of 1964, § 706(e), 42
U.S.C.A. § 2000e-5(e).

**[2] Civil Rights 78 ☞1505(4)**

78 Civil Rights
    78IV Remedies Under Federal Employment Dis-

crimination Statutes
        78k1503 Administrative Agencies and Pro-
ceedings
            78k1505 Time for Proceedings; Limita-
tions
                78k1505(4) k. Effect; Excuses in Gen-
eral. Most Cited Cases
If a plaintiff does not file a charge concerning a dis-
crete act of discriminatory conduct within 300 days
of its occurrence, her claim is time-barred and she
may not recover. Civil Rights Act of 1964, §
706(e), 42 U.S.C.A. § 2000e-5(e).

**[3] Civil Rights 78 ☞1505(7)**

78 Civil Rights
    78IV Remedies Under Federal Employment Dis-
crimination Statutes
        78k1503 Administrative Agencies and Pro-
ceedings
            78k1505 Time for Proceedings; Limita-
tions
                78k1505(7) k. Continuing Violations;
Serial, Ongoing, or Related Acts. Most Cited Cases
Discrete discriminatory acts are not actionable un-
der Title VII if time-barred, even when they are re-
lated to acts alleged in timely filed charges. Civil
Rights Act of 1964, § 706(e), 42 U.S.C.A. §
2000e-5(e).

**[4] Civil Rights 78 ☞1505(7)**

78 Civil Rights
    78IV Remedies Under Federal Employment Dis-
crimination Statutes
        78k1503 Administrative Agencies and Pro-
ceedings
            78k1505 Time for Proceedings; Limita-
tions
                78k1505(7) k. Continuing Violations;
Serial, Ongoing, or Related Acts. Most Cited Cases
Employer's alleged failure to promote African-
American employee at any time up until the date of
her termination did not constitute a continuing viol-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 2596664 (N.D.Ill.)
**2008 WL 2596664 (N.D.Ill.)**

ation, as required to toll 300-day limitations period on employee's Equal Employment Opportunity Commission (EEOC) claim; employee's failure-to-promote claim was premised instead on employer's failure to promote employee to a specific position that was available at a specific time. Civil Rights Act of 1964, § 706(e), 42 U.S.C.A. § 2000e-5(e).

**[5] Civil Rights 78 ☞1505(7)**

78 Civil Rights
   78IV Remedies Under Federal Employment Discrimination Statutes
      78k1503 Administrative Agencies and Proceedings
         78k1505 Time for Proceedings; Limitations
            78k1505(7) k. Continuing Violations; Serial, Ongoing, or Related Acts. Most Cited Cases
"Continuing violation doctrine" permits a plaintiff to delay filing an Equal Employment Opportunity Commission (EEOC) charge until a series of acts by an employer blossoms into a wrongful injury on which a suit can be based. Civil Rights Act of 1964, § 706(e), 42 U.S.C.A. § 2000e-5(e).

**[6] Civil Rights 78 ☞1505(7)**

78 Civil Rights
   78IV Remedies Under Federal Employment Discrimination Statutes
      78k1503 Administrative Agencies and Proceedings
         78k1505 Time for Proceedings; Limitations
            78k1505(7) k. Continuing Violations; Serial, Ongoing, or Related Acts. Most Cited Cases
Continuing violation doctrine under Title VII has no application to discrete acts of discrimination, such as termination or the failure to hire, which are actionable at the time they take place. Civil Rights Act of 1964, § 706(e), 42 U.S.C.A. § 2000e-5(e).

**[7] Civil Rights 78 ☞1505(3)**

78 Civil Rights
   78IV Remedies Under Federal Employment Discrimination Statutes
      78k1503 Administrative Agencies and Proceedings
         78k1505 Time for Proceedings; Limitations
            78k1505(3) k. Operation; Accrual and Computation. Most Cited Cases
Failure-to-promote is generally considered a discrete discriminatory act for purposes of the 300-day deadline on filing Equal Employment Opportunity Commission (EEOC) claim. Civil Rights Act of 1964, § 706(e), 42 U.S.C.A. § 2000e-5(e).

**[8] Civil Rights 78 ☞1532**

78 Civil Rights
   78IV Remedies Under Federal Employment Discrimination Statutes
      78k1532 k. Pleading. Most Cited Cases
To survive a motion to dismiss, the plaintiff in an employment discrimination case need not allege facts corresponding to each element of a prima facie case under the *McDonnell Douglas* burden-shifting framework. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[9] Civil Rights 78 ☞1532**

78 Civil Rights
   78IV Remedies Under Federal Employment Discrimination Statutes
      78k1532 k. Pleading. Most Cited Cases

**Civil Rights 78 ☞1536**

78 Civil Rights
   78IV Remedies Under Federal Employment Discrimination Statutes
      78k1534 Presumptions, Inferences, and Burden of Proof
         78k1536 k. Effect of Prima Facie Case; Shifting Burden. Most Cited Cases
The prima facie case under *McDonnell Douglas* is an evidentiary standard, not a pleading requirement.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 2596664 (N.D.Ill.)
**2008 WL 2596664 (N.D.Ill.)**

Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[10] Civil Rights 78 ⬚1532**

78 Civil Rights
 78IV Remedies Under Federal Employment Discrimination Statutes
  78k1532 k. Pleading. Most Cited Cases
African-American employee's allegations, that she worked for employer for nearly six years and performed her job satisfactorily, that employer took various adverse actions against her based on her race, including terminating her, and that less qualified non-African-American employees, including one whom employee trained, were not terminated, were sufficient to state a claim for discriminatory discharge under Title VII; employee pled enough facts to provide the defendants with sufficient notice to begin to investigate and defend against her claim. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[11] Civil Rights 78 ⬚1532**

78 Civil Rights
 78IV Remedies Under Federal Employment Discrimination Statutes
  78k1532 k. Pleading. Most Cited Cases
African-American employee's allegations, that she satisfactorily performed her job for six years, that she complained to her superiors about discrimination, that she was discharged in retaliation for her earlier complaints, and that the reason for her discharge was pretextual, were sufficient to state a claim for retaliatory discharge under the minimal pleading standards that apply to Title VII claims. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

**[12] Civil Rights 78 ⬚1252**

78 Civil Rights
 78II Employment Practices
  78k1241 Retaliation for Exercise of Rights
   78k1252 k. Causal Connection; Temporal Proximity. Most Cited Cases

Suspicious timing is one possible means of establishing causal connection element of a retaliatory discharge claim under Title VII. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

**[13] Civil Rights 78 ⬚1252**

78 Civil Rights
 78II Employment Practices
  78k1241 Retaliation for Exercise of Rights
   78k1252 k. Causal Connection; Temporal Proximity. Most Cited Cases
Suspicious timing is not the only means of proving retaliation under Title VII; other relevant evidence may include an employer's sudden dissatisfaction with an employee's performance. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

Stuart Michael Nagel, Dean B. Chalmers, Chalmers And Nagel, P.C., Chicago, IL, for Plaintiff.
David E. Morrison, Jon Eric Klinghoffer, Kerry Kristin Donovan, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Chicago, IL, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

RUBEN CASTILLO, District Judge.
*1 Beverly A. Mull ("Plaintiff") filed this action against her former employer, Abbott Laboratories ("Defendant"), under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"). (R. 19, First Amended Complaint ("FAC") ¶¶ 1-3.) Plaintiff alleges that Defendant demoted her, failed to promote her, and wrongfully discharged her on the basis of her race. (*Id.* ¶¶ 1-21.)She further alleges that Defendant discharged her in retaliation for making internal complaints about race discrimination. (*Id.* ¶¶ 20-23.)Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 20, Def.'s Mot. to Dismiss.) For the reasons stated below, Defendant's motion is granted in part and denied in part.

### **RELEVANT FACTS**

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

In January 2001, Defendant hired Plaintiff, an African-American woman, as a full-time administrative assistant. (R. 19, FAC ¶¶ 4, 6.) In August 2003, Defendant promoted Plaintiff to a part-time "document specialist" position; Plaintiff continued her duties as an administrative assistant on a part-time basis. (*Id.* ¶ 8.) In April 2004, Defendant promoted Plaintiff to a full-time document specialist position. (*Id.* ¶¶ 9, 11.)In July 2004, a few months after Plaintiff's promotion, Defendant requested that Plaintiff train a newly hired, non-African-American employee as a document specialist, and Plaintiff did so. (*Id.* ¶ 10.)

In April 2005, Defendant demoted Plaintiff from the document specialist position to her former position as administrative assistant. (*Id.* ¶ 11.)At the time of her demotion, Defendant [FN1] informed Plaintiff that she would be reinstated as a document specialist when an opening became available.(*Id.*) After learning of her demotion, Plaintiff in April 2005 filed a complaint with her immediate supervisor and the divisional vice president of employee relations alleging discrimination. (*Id.* ¶¶ 12, 21.)She thereafter continued to complain about her demotion. (*Id.* ¶ 12.)In response to Plaintiff's complaints, Defendant in May 2005 paid Plaintiff the difference in wages that she would have earned as a document specialist since her demotion.(*Id.* ¶ 13.)In late June or early July 2005, Defendant hired a non-African-American employee from outside the company to fill a vacant document specialist position, rather than reinstating Plaintiff. (*Id.* ¶ 14.)

In early August 2006, Plaintiff was called to a meeting where she was questioned about her paperwork associated with a business trip she took in 2003 and a personal vacation she took in February 2006.[FN2](*Id.* ¶ 15.) Plaintiff alleges that she properly obtained and tendered all of the paperwork and approvals to Defendant for both trips in accordance with company policy.(*Id.* ¶¶ 7, 16.)On August 8, 2006, Defendant terminated Plaintiff, citing her failure to comply with company policy concerning the two trips. (*Id.* ¶ 17.)Plaintiff alleges that De-

fendant retained two less-qualified, non-African-American employees as document specialists, including the employee whom Plaintiff had trained. (*Id.*)

*2 On September 20, 2006, Plaintiff filed a charge with the U.S. Equal Opportunity Employment Commission ("EEOC") alleging race discrimination and retaliation in violation of Title VII. (*Id.* ¶ 18.)On September 13, 2007, the EEOC issued her a right-to-sue letter. (*Id.* ¶ 19 & Ex. B, Right-to-Sue Letter.)

### PROCEDURAL HISTORY

On December 11, 2007, Plaintiff brought this action alleging race discrimination and retaliation in violation of Title VII. (R. 1, Compl.) On March 19, 2008, Plaintiff filed her FAC alleging in Count I that Defendant demoted her, failed to promote her, and discharged her on the basis of her race, and in Count II, that Defendant discharged her in retaliation for complaining about the alleged discrimination.[FN3](R. 19, Compl. ¶¶ 1-23.)

Defendant moves to dismiss the FAC in its entirety. (R. 20, Def.'s Mot. to Dismiss at 4-12.) Defendant first argues that certain claims are time-barred because Plaintiff did not file a timely administrative complaint with the EEOC as to these claims. (*Id.* at 4.) Defendant further argues that Plaintiff's discriminatory discharge claim is insufficiently pled "under the heightened pleading standard required by the Supreme Court since its decision in *Bell Atlantic v. Twombly.*"(*Id.*) Finally, Defendant argues that Plaintiff's retaliation claim fails as a matter of law. (*Id.* at 5.)

### LEGAL STANDARD

In determining whether to grant a motion to dismiss under Rule 12(b)(6), the Court assumes all well-pleaded allegations in the complaint to be true, and construes those facts, as well as all reasonable inferences arising therefrom, in the light most favor-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 2596664 (N.D.Ill.)
**2008 WL 2596664 (N.D.Ill.)**

able to the plaintiff. *Killingsworth v. HSBC Bank,* 507 F.3d 614, 618 (7th Cir.2007). To survive a motion to dismiss, the complaint must overcome "two easy-to-clear hurdles:" (1) it must "describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests;" and (2) "its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir 2008).

## ANALYSIS

### I. Timeliness

[1][2][3] Defendant first argues that Plaintiff's race discrimination claims, other than her wrongful discharge claim, are time-barred. (R. 20, Def.'s Mot. to Dismiss at 10.) Title VII requires an employee to file administrative charges with the EEOC within 300 days "after the alleged unlawful employment practice occurred."42 U.S.C. § 2000e-5(e). An "unlawful employment practice" includes various discrete acts such as "termination, failure to promote, denial of transfer, or refusal to hire."*Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *see also Roney v. Ill. Department of Transport.,* 474 F.3d 455, 460 (7th Cir.2007). If a plaintiff does not file a charge concerning a discrete act of discriminatory conduct within 300 days of its occurrence, her claim is time-barred and she may not recover. *Ledbetter v. Goodyear Tire & Rubber Co., Inc.,* --- U.S. ----, 127 S.Ct. 2162, 2169, 167 L.Ed.2d 982 (2007); *Morgan,* 536 U.S. at 109-10, 122 S.Ct. 2061;*Roney,* 474 F.3d at 460.Discrete discriminatory acts are "not actionable if time-barred, even when they are related to acts alleged in timely filed charges."*Morgan,* 536 U.S. at 113-14, 122 S.Ct. 2061.

**\*3** [4] Here, Plaintiff filed her EEOC charge on September 20, 2006; thus, any discrete discriminat-

ory acts that occurred more than 300 days prior to this date, or before November 24, 2005, are time-barred. (*See* R. 19, FAC ¶ 18 & Ex. A, EEOC Charge.) According to the FAC, Plaintiff's demotion occurred in April 2005, and Defendant's failure to promote her occurred in late June or July 2005. (R. 19, FAC ¶¶ 11, 14.) Because these discrete acts fall outside the 300-day window, they are time-barred

[5][6][7] Plaintiff argues that her failure-to-promote claim is not time-barred because in her view, Defendant could have promoted her any time up until the date of her termination in August 2006, and thus, her September 2006 EEOC charge was timely. (R. 22, Pl.'s Resp. to Mot. to Dismiss at 2.) Plaintiff does not cite any case law in support of this theory, although it appears she may be attempting to invoke the "continuing violation" doctrine. (*See id.*)The continuing violation doctrine permits a plaintiff to delay filing an EEOC charge until a series of acts by an employer "blossoms into a wrongful injury on which a suit can be based."*Lewis v. City of Chicago,* 528 F.3d 488, 493 (7th Cir.2008). The doctrine has been applied to claims of hostile work environment, because in such a case the unlawful character of each individual act is not immediately apparent at the time it occurs. *See Morgan,* 536 U.S. at 114-15, 122 S.Ct. 2061;*Lewis,* 528 F.3d at 492-94.However, the continuing violation doctrine has no application to discrete acts of discrimination, such as termination or the failure to hire, which are actionable at the time they take place. *Morgan,* 536 U.S. at 114-15, 122 S.Ct. 2061;*Lewis,* 528 F.3d at 492-94.Failure-to-promote is generally considered a discrete discriminatory act for purposes of the 300-day deadline.*Ledbetter,* 127 S.Ct. at 2169;*Roney,* 474 F.3d at 460.Moreover, it is apparent from the FAC that Plaintiff's failure-to-promote claim is premised on a discrete act: Defendant's failure to promote her to a specific document specialist position that was available in June or July 2005, which was instead filled by someone from outside the company. (*See* R. 19, FAC ¶ 14.) This discrete act was actionable when it

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 2596664 (N.D.Ill.)

Page 6

**2008 WL 2596664 (N.D.Ill.)**

occurred, and Plaintiff's failure to file an EEOC charge within 300 days of the date of this incident precludes her from pursuing this claim

For these reasons, Plaintiff's demotion and failure-to-promote claims are time-barred, and are therefore dismissed with prejudice.

**II. Discriminatory Discharge**

Defendant next argues that Plaintiff's discriminatory discharge claim fails because Plaintiff has not alleged enough facts to satisfy the pleading standard adopted by the Supreme Court in *Bell Atlantic.* (R. 20, Def.'s Mot. to Dismiss at 13.) In *Bell Atlantic,* the Supreme Court "retooled" federal pleading standards; however, the Court did not adopt a fact-pleading standard to supplant the notice-pleading standard that has long applied in federal court. *See Bell Atlantic v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007); *Tamayo,* 526 F.3d at 1083 Following *Bell Atlantic,* the Seventh Circuit has reaffirmed "the minimal pleading standard" applicable to "simple claims of race or sex discrimination."*Tamayo,* 526 F.3d at 1084;*see also EEOC v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir.2007).

*4 [8][9] Defendant argues that Plaintiff fails to allege a *prima facie* case of discriminatory discharge because she does not "identify or address" any similarly situated employees who were treated more favorably than her. (R. 20, Def.'s Mot. to Dismiss at 7-8; R. 23, Def.'s Reply at 2-3.) As an initial matter, the cases cited by Defendant were decided at the summary judgment stage: this case, by contrast, is only at the pleading stage (*See* R. 20, Def.'s Mot. to Dismiss at 7-8, R. 23, Def.'s Reply at 2.) To survive a motion to dismiss, the plaintiff in an employment discrimination case need not allege facts corresponding to each element of a *prima facie* case under the *McDonnell Douglas* framework. *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 510-11, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *see also Erickson v. Pardus,* --- U.S. ----, 127 S.Ct. 2197,

2200, 167 L.Ed.2d 1081 (2007) (fact pleading not required in federal court)."The *prima facie* case under *McDonnell Douglas* is an evidentiary standard ... not a pleading requirement."*Swierkiewicz,* 534 U.S. at 510, 122 S.Ct. 992.

As the Seventh Circuit recently reiterated, "a plaintiff alleging employment discrimination under Title VII may allege these claims quite generally."*Tamayo,* 526 F.3d at 1081."A complaint need not 'allege all, or *any,* of the facts logically entailed by the claim,' and it certainly need not include evidence."*Id.* (citation omitted). Indeed, a litigant is entitled to conduct discovery before her claims are "put to their proof." *Id.* Even after *Bell Atlantic,* a complaint alleging employment discrimination "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her [protected status]."*Id.* at 1084.

[10] Here, Plaintiff alleges that she is African-American; that she worked for Defendant for nearly six years and performed her job satisfactorily; and that Defendant took various adverse actions against her based on her race, including terminating her. (R. 19, FAC ¶¶ 4, 20-21.) She further alleges that less qualified non-African-American employees, including one whom Plaintiff trained, were not terminated. (*Id.* ¶ 20.)Plaintiff has pled enough to state a plausible claim for discriminatory discharge. *See Tamayo,* 526 F.3d at 1085 (plaintiff adequately stated sex discrimination claim where she alleged that she is female; she suffered adverse employment action; defendant discriminated against her based on her sex; and similarly situated male employees were treated more favorably). As in *Tamayo,* Plaintiff has pled enough facts to "provide the defendants with sufficient notice to begin to investigate and defend against her claim."*Id.* Accordingly, this aspect of Defendant's motion to dismiss is denied.

**III. Retaliation**

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 2596664 (N.D.Ill.)
**2008 WL 2596664 (N.D.Ill.)**

Page 7

[11] Defendant next argues that Plaintiff's retaliation claim fails as a matter of law (R. 20, Def.'s Mot. to Dismiss at 8-11.) As an initial matter, to the extent Defendant is arguing that the retaliation claim has been inadequately pled under *Bell Atlantic,* the Court rejects this argument (*See id* at 8-9.) As stated above, the Seventh Circuit recently reaffirmed the minimal pleading standards that apply to Title VII claims even after *Bell Atlantic. See Tamayo,* 526 F.3d at 1084-85. Here, Plaintiff alleges that she satisfactorily performed her job for six years; that she complained to her superiors about discrimination, that she was discharged in retaliation for her earlier complaints; and that the reason given for her discharge was pretextual. (R. 19, FAC ¶¶ 20-23.) This is sufficient to state a plausible retaliation claim. *See Tamayo,* 526 F.3d at 1085 (plaintiff adequately stated retaliation claim where she alleged that she performed her job satisfactorily; that she complained about sex discrimination; and that she subsequently suffered adverse employment actions).

\*5 [12] Defendant further argues that Plaintiff's retaliation claim fails as a matter of law because she cannot establish a causal link between her complaints and her discharge (R. 20, Def.'s Mot. to Dismiss at 10-11; R. 23, Def.'s Reply at 3.) To prevail on her retaliation claim, Plaintiff ultimately must demonstrate through either direct or circumstantial evidence that there was a causal link between her protected activity and her termination. 42 U.S.C. § 2000e-3(a), *Metzger v. Ill. State Police,* 519 F.3d 677, 681 (7th Cir.2008). Suspicious timing is one possible means of establishing such a causal connection. *See, e.g., Benders v. Bellows & Bellows,* 515 F.3d 757, 764 (7th Cir.2008); *Culver v. Gorman & Co.,* 416 F.3d 540, 546 (7th Cir.2005). Defendant argues that Plaintiff cannot possibly establish suspicious timing here because 16 months passed between her complaints of discrimination and her termination. (*See* R. 20, Def.'s Mot. to Dismiss at 10-11.)

[13] Once again, the cases cited by Defendant were

decided at the summary judgment stage; this is a different standard than determining whether Plaintiff has stated a plausible retaliation claim. (*See id.*) Further, the Court disagrees with Defendant that Plaintiff cannot possibly establish suspicious timing surrounding her termination. Although Plaintiff alleges in her FAC that she made her initial complaint about discrimination in April 2005, she alleges that she thereafter "continued to complain" to Defendant about her demotion and Defendant's failure to reinstate her to a document specialist position. (R. 19, FAC ¶ 12.) Consistent with the FAC, Plaintiff may be able to show that she complained closer in time to her discharge, thereby creating an inference of retaliation based on suspicious timing. Moreover, suspicious timing is not the only means of proving retaliation. Other relevant evidence may include "an employer's sudden dissatisfaction with an employee's performance."*Culver,* 416 F.3d at 546. Here, the FAC contains allegations that Plaintiff was employed by Defendant for nearly six years; that she was satisfactorily performing her job; and that in August 2006, after her continued complaints of discrimination, she was called to a meeting and questioned about expenses from a 2003 business trip and a personal trip she took six months earlier; and that she complied with all company policies in connection with these two trips. (R. 19, FAC ¶¶ 7, 15, 20-23.) Defendant's delayed concern over these trips, particularly the trip taken three years earlier, could create an inference that the stated reason for Plaintiff's discharge was pretextual and that Defendant's true motive was retaliatory. *See Culver,* 416 F.3d at 546.

Regardless, these are issues that must be sorted out at later stages of the litigation. *See Bellows,* 515 F.3d at 764 (if the plaintiff presents evidence establishing a *prima facie* case of retaliation, she can defeat a motion for summary judgment, unless the defendant presents unrebutted evidence that the plaintiff would have been fired even absent her protected activity). At this stage, the Court must accept all of Plaintiff's allegations as true. Plaintiff has sufficiently stated a plausible claim for retaliation,

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----. 2008 WL 2596664 (N.D Ill.)
**2008 WL 2596664 (N.D.Ill.)**

Page 8

including the causation element, and therefore, this aspect of Defendant's motion is denied.

### CONCLUSION

**\*6** For the reasons stated above, Defendant's motion to dismiss (R. 20) is granted in part and denied in part. Plaintiff's demotion and failure-to-promote claims are dismissed with prejudice.

The parties should exhaust all remaining settlement possibilities for this lawsuit in light of this opinion, prior to July 14, 2008. A status hearing will be held in open court to set a final litigation schedule, including a trial date, on **July 17, 2008, at 9:45 a.m.** unless this Court is notified that this case has been settled.

> FN1. Plaintiff does not specify who within the company conveyed this information to her. (*See* R. 19, FAC ¶ 11.)

> FN2. Plaintiff does not specify the individual or individuals within the company with whom she met. (*See* R. 19, FAC ¶ 14.)

> FN3. Defendants filed a motion to dismiss Plaintiff's original complaint, and before her response to the motion was due, Plaintiff sought leave to file the FAC, which the Court granted. (R. 10, Def.'s Mot. to Dismiss; R. 15, Pl.'s Mot. for Leave to File FAC; R. 18, Minute Entry.) The Court notes that the FAC is not a model of clarity. Within Count I, there are multiple race discrimination claims that are not clearly delineated. The Court agrees with Defendant that Plaintiff is raising a failure-to-promote and wrongful discharge claim in Count I; the Court also views Count I as containing a separate race discrimination claim based on Plaintiff's demotion. (*See* R. 19, FAC ¶ 20.)

N.D.Ill.,2008.
Mull v. Abbott Laboratories

--- F.Supp.2d ----, 2008 WL 2596664 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is made and entered into by and between Tyrone Lloyd ("Lloyd") and Ford Motor Company, a corporation ("Ford") (defined herein for all pertinent purposes to include its officers, directors, employees, successors, assigns, authorized agents, contractors, vendors, affiliates and subsidiaries).

WHEREAS, on or about August 14, 1998, Lloyd filed a Complaint against Ford in the United States District Court for the Northern District of Illinois, Civil Action Number 98C5054, styled "*Lloyd v. Ford Motor Company et al.*" (the "Civil Action").

WHEREAS, on August 8, 2000, the parties to the Civil Action reached agreement upon the terms of a confidential settlement and release by and through their respective counsel, who confirmed the primary terms of the parties' agreement by executing a letter agreement dated August 8, 2000, and further agreed thereby to execute a duly prepared written instrument to carry out the parties' intentions; and

WHEREAS, without any admission of liability or fault by any party, Lloyd and Ford now desire to settle and compromise certain disputes between them;

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, Lloyd and Ford do hereby agree as follows:

1.      Ford agrees to pay Lloyd and his attorneys (or their appropriate legal designees) the sum of fifty-five thousand dollars ($55,000.00).

2.      In consideration of the payment referred to in Paragraph 1 hereof, and for other good and valuable consideration as set forth herein, Lloyd does hereby, on behalf of himself and his heirs, executors, administrators, and successors, release and forever discharge Ford, and its officers, directors, shareholders, employees, agents, attorneys, representatives, successors and assigns (the

"Released Parties") from any and all claims, damages, lawsuits, injuries, liabilities or causes of action, of whatsoever kind or nature, whether known to him or not, arising directly or indirectly from any act or omission committed by the Released Parties prior to the date hereof, including, without limitation, those claims which were or could have been asserted in the Civil Action. Lloyd specifically agrees to release the Released Parties from any claim he may have under the Illinois Human Rights Act and any claim he may have for intentional or negligent infliction of emotional distress, negligent hiring or retention, and assault and battery.

3.      Lloyd agrees to release the Released Parties from all claims he may have under any laws which are meant to protect employees in their employment relationships, including, without limitation, claims under Title VII of the Civil Rights Act of 1964, the Equal Pay Act, 42 U.S.C. " 1981, 1983 ʲand 1985, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the Fair Labor Standards Act, the Labor Management Relations Act, Workers' Compensation laws and Unemployment Compensation laws. Lloyd also agrees to release the Released Parties from any claims for attorneys' fees, costs or expenses.

4.      Notwithstanding the provisions of Paragraphs 2 and 3 of this Agreement, Lloyd does not release the Released Parties from any pending workers compensation claims for on the job injuries suffered by Lloyd during the course of his employment with Ford.

5.      Lloyd and his counsel agree that they will keep the terms and conditions of this Agreement in utter, absolute and strictest confidence and secrecy. Neither the sum included in this Agreement nor any other term or provision may be revealed by Lloyd, Lloyd's counsel, or by any member of Lloyd's immediate family, without prior written permission of Ford, except that Lloyd and his counsel may reveal the terms and provisions of this Agreement consistent with and limited to the terms of an order of a court of competent jurisdiction upon notification and may provide such

information to accountants, to tax consultants, to government taxing authorities, to the United States Bankruptcy Trustee in the pending bankruptcy proceedings styled, *In re Tyrone & Zonraller Lloyd*, 98 B 36200, pending in the Northern District of Illinois (hereinafter "Lloyd Bankruptcy"), and to physicians and/or counselors acting in a professional capacity, without written permission. If asked by others regarding this settlement, Lloyd and his counsel may say only that "the matter has been resolved."

6.      Lloyd agrees that neither he nor any member of his immediate family shall disclose any information concerning his allegations in the Lawsuit or any other claim against Ford to any journalist or other agent of print, radio, television or internet media.

7.      Lloyd agrees to pay Ford the sum of fifty thousand dollars ($50,000.00) as liquidated damages in the event of a breach of any provision contained in Paragraphs 5 or 6 of this Agreement.   Lloyd further agrees to indemnify and hold harmless Ford or any of the Released Parties from any expenses or liabilities incurred, including but not limited to attorneys' fees, as a result of such breach.

8.      Lloyd understands that Ford denies liability as to all claims but desires to end all controversy and settle all disputes between them.   Lloyd further understands and agrees that neither this Agreement nor any action taken hereunder is to be construed as an admission by Ford that it has violated any local, state or federal law, statutory or common, and Ford expressly denies any violation of such law.

9.      Lloyd acknowledges that the payment referred to in Paragraph 1 herein is attributable to payment on account of alleged personal injuries related to emotional distress, with physical manifestation of said emotional distress, and none of the payments are intended to be the payment of wages.   Ford shall issue a 1099 tax form to each of Lloyd and Jay Deratany and

Associates at the time of such payments. Lloyd understands and agrees that should the Internal Revenue Service or any other taxing authority cause Ford to pay any taxes, penalties, or interest, based on claims by the taxing authority that any amount should have been deducted from the proceeds of this settlement or that any amount was improperly reported, or not reported, he will fully indemnify Ford for such amount.

10.    Upon Lloyd's execution of this Agreement, Lloyd agrees to immediately withdraw any pending claims of discrimination filed with the U.S. EEOC and/or the Illinois Department of Human Rights against Ford.

11.    Within fifteen days after Lloyd's execution of this Agreement and payment of the sum referred to in Paragraph 1 hereof and approval of the Agreement by the United States Bankruptcy Court in the Lloyd Bankruptcy, the parties agree to file a stipulation dismissing the Civil Action with prejudice with each party to bear his or its own expenses, costs and attorneys' fees.

12.    Lloyd and Ford expressly acknowledge and agree that this Agreement is contingent upon approval of the sum to be paid in Paragraph 1 hereof by the United States Bankruptcy Court in the pending bankruptcy proceedings styled, *In re Tyrone & Zonraller Lloyd*, 98 B 36200, pending in the Northern District of Illinois. Lloyd and Ford further acknowledge and agree that this Agreement is contingent upon ensuring that the terms of settlement and the sum to be paid in Paragraph 1 hereof will be placed under proper seal or otherwise protected from disclosure as a matter of public record in the Lloyd Bankruptcy. Lloyd and Ford further agree that they will cooperate and take all steps necessary to expedite the presentation of this Agreement by the United States Trustee for the Lloyd Bankruptcy to the United States Bankruptcy Court for approval of the sum to be paid in Paragraph 1 hereof. Lloyd and Ford further agree that they will cooperate and

take all steps necessary to ensure that the United States Trustee for the Lloyd Bankruptcy will file any and all motions, documents, and other papers relating to this Agreement, under seal with the United States Bankruptcy Court, and that under no circumstances will the sum to be paid in Paragraph 1 hereof, or the terms of this Agreement, be disclosed in any public record or file, including the Lloyd Bankruptcy.

13.    The parties acknowledge and agree that this document embodies the entire Agreement between the parties, and no party has made any representation or promise to do or refrain from doing any act or thing not specifically herein set forth.

14.    The parties understand and agree that if any term or provision of this Agreement is construed by any court of competent jurisdiction to be unenforceable or void by operation of law, the remainder of this Agreement shall remain effective and enforceable.

15.    In executing this Agreement, each of the undersigned parties acknowledges that such party has read the entire Agreement, has consulted with counsel and understands that the terms hereof are contractually binding and not a mere recital, and agrees that such party is not relying on any statement or representation made by any party hereby released or any other attorneys, agents, servants, or employees of any party released concerning any matter and is relying upon the judgment of such party and upon advice of counsel. Each of the undersigned parties further agrees that such party has voluntarily entered into this Agreement, without coercion or duress.

16.    Each signatory to this Agreement represents and warrants that he or he has full power, authority and legal right, and has completed all proceedings and obtained all approvals and consents necessary, to execute, deliver and perform this Agreement, and that no signatory has assigned any claims, actions, causes of actions, rights or obligations released and discharged under the terms of this Agreement.

17.    All parties to this Agreement agree to sign or execute all necessary documents, and to take all necessary actions, required to obtain the above-noted dismissals with prejudice.

18.    Neither this Agreement nor any of its provisions may be changed, waived, discharged or terminated, except by an instrument in writing signed by the person or entity against whom enforcement of the change, waiver, discharge or termination is sought.

19.    This Agreement shall be governed by and construed under the laws of the State of Illinois.

20.    This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which together shall constitute one instrument. All fully executed copies of the Agreement are to be considered duplicate originals, equally admissible in evidence.

IN WITNESS WHEREOF, the parties hereto, or their authorized representatives, have affixed their signatures as their own free act and deed as follows:

Tyrone Lloyd

Date: March 26, 2001

Attested and Approved as to Form:

Jay Paul Deratany
Scott Clark
JAY PAUL DERATANY & ASSOCIATES
120 North LaSalle Street, Suite 2900
Chicago, Illinois  60602

Date: 2/-26/01

FORD MOTOR COMPANY

By: _Karen Watkins_____

~~Name:~~ ___COUNSEL_____

Title: _____

Date: ___5/21/01_____

Attested and Approved as to Form:

W. Perry Brandt
~~James R.~~ Ward
BERKOWITZ, FELDMILLER, STANTON,
BRANDT, WILLIAMS & STUEVE, LLP
Two Brush Creek Boulevard, Suite 550
Kansas City, Missouri 64112

Date: _May 30, 01_____