**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TYRONE J. LLOYD | ) | |
| | ) | |
| Plaintiff, | ) | **Civil Action** |
| | ) | |
| vs. | ) | |
| | ) | **Case No. 08-CV-3059 PH** |
| | ) | |
| | ) | **Judge Guzman** |
| FORD MOTOR COMPANY, | ) | **Magistrate Judge Cox** |
| | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO**
**DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS**

**I.     INTRODUCTION**

This case involves discrimination and retaliation by Ford Motor Company pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Defendant Ford Motor Company seeks to have this matter dismissed.

**II.     STATEMENT OF FACTS**

Tyrone Lloyd, an African-American male, was hired as a tow driver by Ford Motor Company on August 26, 1991. (Exhibit A). During his employment, he has underwent a serious of discriminatory events, that are outlined below:

December 10, 1996

Tyrone Lloyd passed Welding Lab at Prairie State College. (Exhibit B).

January 1997 through May 1997

Leslie Vincent, Ford Motor Company employer and supervisor of Mr. Lloyd, would repeatedly refer to Mr. Lloyd as "n*gger" and "black a**hole." (Exhibit A).

January 1997 through April 3, 1998

While Mr. Lloyd was delivering racks to the stamping press line and removing filled racks from the line, Joyce McCain, Ford Motor Company employer and supervisor of Mr. Lloyd, would refer to Mr. Lloyd as "n*gger," "black a**hole," and "black mother f*cker." Joyce McCain also told Mr. Lloyd to "move your black ass." (Exhibit A).

May 9, 1997

Mr. Lloyd, who was qualified for a job promotion to "fork truck operator," was passed over for the position that was given to an employee who has less seniority and was white. (Exhibit A).

November 6, 1997

Joyce McCain stomped on Mr. Lloyds foot, during his course of employment at Ford Motor Company. (Exhibit A).

November 5, 1998

Mr. Lloyd applied for a position in welder repair. He did not receive the promotion. (Exhibit C).

April 6, 1998

Tyrone Lloyd filed a complaint of racial discrimination with U.S. Equal Employment Opportunity Commission (hereinafter, "EEOC"). (Exhibit D).

July 3, 1998

Tyrone Lloyd received a right-to-sue letter from the EEOC, advising him he had 90 days after receipt of the letter to file an action under Title VII in the U.S. District Court. (Exhibit A).

August 14, 1998

Tyrone Lloyd, by and through his attorneys, filed a complaint against Ford Motor Company. (Exhibit A).

April 1, 1999

Tyrone Lloyd, well qualified, bid on the position of "lift truck operator." Mr. Lloyd was not promoted, instead L.S. LaCoss, a man with less experience and who is white was given the position. (Exhibit E).

April 9, 1999

Tyrone Lloyd filed a union grievance. The union found:

> The aggrieved protest the section of L.S. LaCoss for ind lift
> trk operator both the aggrieved and the protested (LaCoss)
> have the same merit and ability, However the aggrieved is a
> tow driver and therefore should receive preference over
> other applicant. (Exhibit F).

August 2, 1999

Mr. Lloyd applied for a position in welder repair. He did not receive the promotion. (Exhibit C).

March 26, 2001

Tyrone Lloyd and Ford Motor Company entered into a settlement agreement regarding his Title VII action.  (Exhibit G).

January 7, 2003

Mr. Lloyd applied for a position as a crane operator. He did not receive the promotion. (Exhibit H).

March 3, 2003

Mr. Lloyd applied for a position in welder repair. He did not receive the promotion. (Exhibit H).

April 9, 2003

Tyrone Lloyd was unjustly disciplined, as determined by union grievance committee, for a reasonable mistake made during training. (Exhibit I).

February 4, 2004

Tyrone Lloyd, with experience as an electronic repairman and as a certified welder, applied for the position of "welder repair".  (Exhibit J).

March 12, 2004

Mr. Lloyd was passed over for the position of welder repair. (Exhibit K).

<u>March 16, 2004</u>

Tyrone Lloyd filed a union grievance. The union found:

> On 3-12-04, Mr. Lloyd was overlooked and denied the job promotion of welder repair. Instead it was given to E.E. Rosine (seniority, 6-8-92). This denial was based soley on an disciplinary action on 4-9-03. This incident which was never grieved to his request, was solely unfounded and wrong. He was training and allowed to make reasonable mistakes. Yet when he made a mistake, he was unjustly disciplined and disqualified. This disciplinary action should not have caused Mr. Lloyd the job promotion for which he have merit, ability, and seniority.

The union request that Mr. Lloyd be given the welder repair promotion immediately and be made whole of all lost wages. (Exhibit K).

<u>March 29, 2004</u>

The following persons were assigned a welder repair position:

Eldon Rosine, a person with less seniority then Mr. Lloyd
Anthony Hernandez, a person with less seniority then Mr. Lloyd
Steven Brame
Uriel Olmos
Willie Wheeler
David Merzcus
Dorothy Farris
J.N. Valente (Exhibit L).

<u>July 1, 2004</u>

Mr. Lloyd filed a complaint with Ford Motor Company labor relations regarding harassment by his supervisor Roll Greene.

<u>September 15, 2004</u>

The following persons were assigned a welder repair position:

T.A. Pilarczyk
W.K. Wilson (Exhibit M).

<u>December 20, 2004</u>

Ford Motor Company agreed and promised to promote Mr. Lloyd to welder repair. (Exhibit K).

<u>December 20, 2004 through November 2007</u>

Mr. Lloyd never was assigned a welder repair job, while one of the above persons who was put into the position had retired. There was an open position.

<u>December 2005</u>

Mr. Lloyd check the status of his promotion to welder repair. Ford Motor Company assured him of the promotion.

<u>January 2006</u>

W.K. Wilson retired, leaving open a position in welder repair.

<u>Summer 2006</u>

Mr. Lloyd checked the status of his promotion to welder repair. Ford Motor Company assured him of the promotion.

<u>January 30, 2007</u>

Mr. Lloyd filed a complaint with Ford Motor Company labor relations regarding harassment by his supervisor Leslie Vincent and Marvill Griffin. Leslie Vincent remained a supervisor in Mr. Lloyd's department after the original lawsuit in which she was a named defendant.  Ms. Vincent continued to give Mr. Lloyd a hard time – i.e. referring to him as a "troublemaker".

<u>Summer 2007</u>

Mr. Lloyd checked the status of his promotion, and spoke with a supervisor. Ford Motor Company assured him of the promotion.

<u>November 2007</u>

Ford Motor Company closed the welder repair classification, so no more jobs would be assigned.

<u>January 29, 2008</u>

Mr. Lloyd spoke with the union regarding the welder repair position.

<u>March 3, 2008</u>

Tyrone Lloyd filed the following charge with the EEOC:

> I began my employment with the above named Respondent on August 26, 1991. My current position is Fork Driver. I engaged in protected activity. On or about November 2007, I was notified I would not be promoted.
>
> I believe that I have been retaliated against, in violation of Title VII of the Civil Rights Act of 1964, as amended. (Exhibit N).

<u>March 11, 2008</u>

Tyrone Lloyd received a right-to-sue letter from the EEOC, advising him he had 90 days after receipt of the letter to file an action under Title VII in the U.S. District Court. Mr. Lloyd had until June 8, 2008, to file his action. (Exhibit O)

<u>May 27, 2008</u>

Tyrone Lloyd filed this action pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

<u>August 26, 2008</u>

Tyrone Lloyd filed a complaint detailing the harassment by Jack Pettite, as well as by his supervisor Brian M. Screamed, who "used seniority as a factor to keep moving me out of [his] department." (Exhibit P).

Defendant Ford Motor Company now seeks to dismiss Plaintiff's action.

## III.    STANDARD OF REVIEW

On a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations of fact are taken as true and all reasonable inferences are drawn in the plaintiff's favor. <u>Leatherman v. Tarrant County Narcotics Unit</u>, 507 U.S. 163, 164-165, 113 S.Ct. 1160 (1993); <u>Swofford v. Madrell</u>, 969 F.2d 547, 549 (7th Cir. 1992).

A plaintiff survives a Motion to Dismiss when the complaint clears two easy-to-clear hurdles:

1.    the complaint describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests; and

2.    the complaint's allegations must plausibly suggest that plaintiff had a right to relief, raising that possibility above a speculative level. <u>Mull v. Abbott Laboratories</u>, 2008 WL 2596664 (N.D.Ill).

A plaintiff alleging employment discrimination under Title VII may allege these claims quite generally. <u>Id</u>. A complaint need not allege all, **<u>or any</u>**, of the facts logically entailed by the claim, and **<u>it certainly need not include evidence</u>**. <u>Id</u>. A complaint alleging employment discrimination need only aver that the employer instated a specified adverse employment action against the plaintiff on the basis of his or her protected status. <u>Id</u>.

In <u>Mull v. Abbott Laboratories</u>, 2008 WL 2596664 (N.D.Ill. June 30, 2008), a case cited and included as an exhibit by the Defendant, the court upheld the Plaintiff's retaliation claim of the complaint. The court held "plaintiff alleges that she satisfactorily performed her job for six years; that she complained to her supervisors about discrimination; that she was discharged in retaliation for her earlier complaints; and that the reason given for her discharge was pretextual. This is sufficient to state a plausible retaliation claim."

Defendant has the burden to prove that Plaintiff has no plausible right to relief. Defendant is unable to do so.

## IV.    ARGUMENT

### A.    PLAINTIFF'S COUNT II: DISCRIMINATION CLAIM SURVIVES A MOTION TO DISMISS WHEN PLAINTIFF SUFFICIENTLY EXHAUSTED ADMINISTRATIVE REMEDIES.

Defendant Ford Motor Company contends that Plaintiff's claim of discrimination is barred, because Tyrone Lloyd failed to check the box "race" on his EEOC form filed on March 3, 2008. Defendant is wrong.

Prior to filing a Title VII suit, a plaintiff must exhaust his administrative remedies with the EEOC. Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 128-29) (7th Cir. 1989). A corollary of this exhaustion requirement is that generally, a plaintiff cannot base her complaint on claims he did not include in his EEOC charge. Nevertheless, since most EEOC charges, including Mr. Lloyd's in this case, are completed by laypersons without the assistance of attorneys, "a Title VII plaintiff need not allege each and every fact that … form[s] the basis of … her complaint." Cheek v. Western & S. Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994). Allegations outside the body of an EEOC charge may be considered in a complaint when it is clear that the charging party intended the EEOC to investigate the allegations. Cheek v. Western and Southern Life Ins. Co., 31 F.3d 497 (7th Cir. 1994).

> A plaintiff may proceed on a claim not explicitly mentioned in his EEOC charge is the claim is like or **reasonably related to the EEOC charges**, and the claim in the complaint could be **expected to grow out of an EEOC investigation of the charge**. Id.

It is "reasonably related" if it involved the same conduct and individuals. Harper v. Godfrey Co., 45 F.3d 143, 148 (7th Cir. 1995). Generally, liberal standards applies in determining if new claims are reasonably related to those claims mentioned in the EEOC charge. Miller v. American Airlines, Inc., 525 F.3d 520 (7th Cir. 2008). Technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiated the process." Love v. Pullman Co., 404 U.S. 522, 527 (1972).

"What boxes … are checked on the EEOC form do **NOT** necessarily control the scope of a subsequent civil complaint." <u>Kristufek v. Hussmann Foodservice Co</u>., 985 F.2d 364, 368 (7th Cir. 1993)(The court held that the plaintiff's retaliatory charge was sufficiently "like or related" to his claim of age discrimination which was filed with the EEOC).

In <u>Jenkins v. Blue Cross Mut. Hospital Ins., Inc.</u>, 538 F.3d 164 (7th Cir. 1976), the court held plaintiff's sex discrimination claim was reasonably related to her EEOC charge. Plaintiff's charge with the EEOC, showed a check mark in the box on the form to indicate the discrimination was because of "Race or Color" but no check mark appeared in the box preceded by the word "Sex." The court held that the Civil Rights Act is designed to protect those who are least able to protect themselves. Complainants to the EEOC are seldom done by lawyers. To compel the charging party to specifically articulate in a charge filed with the Commission the full panoply of discrimination which he may have suffered may cause the very persons Title VII was designed to protect to lose that protection because they are ignorant of or unable to thoroughly describe the discriminatory practices to which they are subjected. The court upheld and concurred with the Fifth Circuit which held "we decline to hold that the failure to place a check mark in the correct box is a fatal error. In the context of Title VII, no one not even the unschooled should be boxed out."

Similarly, in this case, Plaintiff Mr. Lloyd's charge of discrimination was reasonably related to his charge of retaliation. Mr. Lloyd has a lengthy history of discriminatory treatment by his employer Ford Motor Company dating back to 1997, where his supervisors would single out and verbally abuse Mr. Lloyd by referring to him

as "n*gger," "black a**hole," and "black mother f*cker." (Exhibit A). Mr. Lloyd filed an EEOC charge of discrimination and filed a complaint. The case was settled in 2001. The racial discrimination, however, did not end with the filing of the EEOC charge and complaint. Ford Motor Company just became subtle and underhanded about its discriminatory practices – i.e. multiple denials of promotions and unjust disciplinary actions. Ford Motor Company masked discrimination by "employment decision".

In 2003 and 2004, Mr. Lloyd applied for a position as welder repair. He was well qualified, with experience as an electronic repairman and as a certified welder. Defendant Ford Motor Company denied him the appointment. Mr. Lloyd filed a grievance with the union. The union had found:

> On 3-12-04, Mr. Lloyd was overlooked and denied the job promotion of welder repair. Instead it was given to E.E. Rosine (seniority, 6-8-92). This denial was based soley on an disciplinary action on 4-9-03. This incident which was never grieved to his request, was solely unfounded and wrong. He was training and allowed to make reasonable mistakes. Yet when he made a mistake, he was unjustly disciplined and disqualified. This disciplinary action should not have caused Mr. Lloyd the job promotion for which he have merit, ability, and seniority. (Exhibit K).

The union request that Mr. Lloyd be given the welder repair promotion immediately and be made whole of all lost wages. (Exhibit K). Defendant agreed to promote Mr. Lloyd, however did not follow through. For three (3) years, other welder repair persons, of Caucasian descent, were being given work. Mr. Lloyd repeatedly hoped and requested about his promotion that he was promised. Although promises upon promises were made regarding assignment, Defendant, however, never assign him. In 2007, Defendant closed the welder repair position, Mr. Lloyd having never received an assignment was forever barred from the position he was entitled.

10

Mr. Lloyd believed he was being targeted for his earlier complaint based on race.

As a result, Tyrone Lloyd filed the following charge with the EEOC:

> I began my employment with the above named Respondent on August 26, 1991. My current position is Fork Driver. I engaged in protected activity. **On or about November 2007, I was notified I would not be promoted**.
>
> I believe that I have been retaliated against, in violation of Title VII of the Civil Rights Act of 1964, as amended. (Exhibit N).

As in Cheek, Mr. Lloyd filed the charge with EEOC on his own behalf. Mr. Lloyd is not a trained attorney, was never trained on filing EEOC charges, and did not understand the information required to be incorporated in such a charge. Mr. Lloyd was not assisted by counsel when filing out the EEOC charge. It would be unfair to hold Mr. Lloyd to a strict standard. A liberal standard applies to Mr. Lloyd's case in determining if new claims are reasonably related to those claims mentioned in the EEOC charge. Miller v. American Airlines, Inc., 525 F.3d 520 (7th Cir. 2008).

Had the EEOC investigated the history of Mr. Lloyd's charge, despite his failure to check the "Discrimination" box, Mr. Lloyd's complaint of racial discrimination would have surfaced. The "protected activity" includes as reports of racial discrimination, reports of harassment, and reports by Mr. Lloyd of retaliation. Mr. Lloyd had a long history of reporting claims of discrimination to his union, labor relations, and the Ford Motor Company, all of which where ignored or pushed aside. Had EEOC investigated, they would have discovered that Mr. Lloyd filed complaints with Ford Motor Company labor relations regarding harassment by his supervisors Roll Greene, Leslie Vincent, Marvill Griffin, and Jack Pettite. In fact, Leslie Vincent, a named defendant in the pervious lawsuit, had remained in Mr. Lloyd's department as his supervisor. Ms. Vincent

had a history of using racial remarks against Mr. Lloyd until settlement. Ms. Vincent continued to harass Mr. Lloyd after the settlement, however, did so with much more discretion and masking harassment with "employment discipline." The continuing harassment by his supervisors created a hostile work environment. EEOC would have discovered that Mr. Lloyd went to the union when repeatedly denied promotions. Ford Motor Company, however, acted as an unfeeling bully to stand up against. Race played a large part of it – all dating back from the first complaint filed with the EEOC in 1998. The retaliatory conduct was two-headed in that the retaliation for his earlier filings was based on race. Discrimination runs hand in hand with the retaliation.

As in the case Kristufek and Jenkins, both cited above, Mr. Lloyd exhausted his administrative remedies with the EEOC, the union, and the company. Mr. Lloyd's discrimination and retaliation claims are reasonably related. Defendant's Motion to Dismiss should be denied.

**B.    PLAINTIFF'S COUNT I AND III: RACE DISCIMINATION AND RETALIATION CLAIM SURVIVES A MOTION TO DISMISS WHEN PLAINTIFF'S CLAIMS WERE FILED WITHIN 4 YEARS OF THE LAST WRONGFUL ACT BY DEFENDANT.**

Defendant also claims Plaintiff's Counts I and III (race discrimination and retaliation under 42 U.S.C. § 1981) are barred by the statute of limitations. As Defendant states "claims brought under Section 1981 are subject to a four-year statute of limitations." Jones v. R.R. Donnell & Sons Co., 541 U.S. 369 (2004). Plaintiff filed his complaint on May 27, 2008. Defendant states that any and all claims based on conduct occurring on or before May 27, 2004 are time-barred. Defendant, however, claims that there is no alleged discriminatory and/or retaliation claim based on conduct occurring after May 27, 2004. Defendant is wrong.

The creation of a hostile work environment tolls the statute of limitations pursuant to 42 U.S.C. § 1981. "A hostile environment is one wrong, and an employee therefore may file the Equal Employment Opportunity Commission (EEOC) charge under Title VII or suit under the statutory time from the last hostile act." Pruitt v. City of Chicago, Illinois, 472 F.3d 925 (C.A.Ill. 2006). A plaintiff can establish an alteration in the terms and condition of employment, as required to support a hostile work environment claim, such as discharge or demotion, or a non-tangible action, such as discriminatory conduct that is so severe or pervasive as to create an abusive working environment. Mannie v. Potter, 394 F.3d 977 (C.A.Ill., 2005).

1.    DISCRIMINATION AND RETALIATION AFTER MAY 27, 2004.

Plaintiff's complaint alleges that the discriminatory and retaliatory treatment is ongoing, well within the time period under section 1981. Mr. Lloyd underwent a series of hostile work environment actions by Ford Motor Company – the involving the promotion and assignment to welder repair, a position he was well qualified for and promised, and the continuing harassment by his supervisors.

A.    PROMISE OF PROMOTION AND BACK PAY TO WELDER REPAIR AND FAILURE TO PROMOTE AND PAY.

In Reese v. Ice Cream  Specialties, Inc., 347 F.3d 1007 (C.A.7 Ind. October 30, 2003), plaintiff never received the raise he claimed was due to him, because he was African American and he sued for discrimination. Plaintiff began working for defendant in August 1996l; his initial pay rate was $7.85 per hour. When Defendant hired plaintiff, it promised to raise his hourly wage by $0.45 in February 1997, his six month anniversary. Defendant did not do so for plaintiff, however, even though it did award a raise to its white employees. Plaintiff filed an EEOC charge in November 2000. The

Defendant argued that plaintiff's claim was untimely because he waited until years after he was denied the raise to file a charge of discrimination with the EEOC. The court held that plaintiff's claim was timely under the continuing violation theory because each week's paycheck was a fresh discriminatory act. Each new paycheck is a separate wrong. Id. See also Bazemore v. Friday, 478 U.S. 385, 206 S.Ct. 3000 (1986); National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 111-12. 122 S.Ct. 2061 (2002); Hildebrandt v. Illinois Dept. of Natural Resources, 347 F.3d 1014 (C.A.7.Ill. 2003).

As of **September 15, 2004**, (**well after the time-barred period of May 27, 2004 – established by Defendant**), Ford Motor Company knew of Mr. Lloyd's right to be placed in the welder position, however Ford Motor Company placed other persons in the position before him – some with less seniority and white. On December 20, 2004, Ford Motor Company issued a promise to the Union and to Mr. Lloyd:

> THE UNION AND THE AGGRIEVED AGREE THAT THIS GRIEVANCE IS MERITORIOUS AND THAT THE AGGRIEVED BE GIVEN THE WELDER REPAIR PROMOTION **IMMEDIATELY AND BE MADE WHOLE OF ALL LOST WAGES**.
>
> IN FULL AND COMPLETE SETTLEMENT AND WITHOUT PRECEDENT TO ANY ISSUE, THE AGGRIEVED EMPLOYEE WILL RECEIVE AN OPPORTUNITY AS A WELDER REPAIR PERSON, SETTLED AND CLOSED. (Exhibit K).

Mr. Lloyd would routinely request the status of his promotion to welder repair> Mr. Lloyd made a request in December 2005, the summer of 2006, and the summer of 2007. Each time, Mr. Lloyd was assured by Ford that he would be placed and compensated.

Mr. Lloyd, however, was never made whole. As in Reese, Mr. Lloyd's paychecks from December 2004 on never reflected the wage increase or the back pay. Mr. Lloyd

never was promoted. A position opened up in January 2006, with the retirement of William Wilson. However, the position was never given to Mr. Lloyd. Between the time Mr. Lloyd was assured of the position until the time the position was closed by the company in November 2007, Ford Motor Company never assigned or afforded Mr. Lloyd the opportunity to be a welder repair and/or paid him the difference in the wage he would have made. Even when a position opened due to retirement, Mr. Lloyd's rights were ignored. The continuing promises by Ford was artificial and ingenious – mere illusion to please the union.

Ford Motor Company's empty promises to Mr. Lloyd ran their course. By March 2008, Mr. Lloyd became aware that he would never receive the promotion he was entitled and filed a claim with the EEOC, and ultimately filed this suit. Mr. Lloyd was patiently hoping and waiting for Ford Motor Company to step up, but they failed him, once again. Mr. Lloyd was repeatedly promised work as welder repair with a wage increase of $4.00 per hour, but Ford Motor Company did not assign work to a man with a history of discriminatory treatment by their company, a man who settled a race discrimination claim with them for $55,000.00, a man who repeatedly reported instances of discrimination and retaliation to the EEOC and union – a "troublemaker". Ford Motor Company compounded discrimination and retaliation action upon action. Every time Ford Motor Company failed to assign Mr. Lloyd was another wrongful act design to discriminate and retaliate against Mr. Lloyd.  Ford Motor Company bullied Mr. Lloyd for speaking up concerning his protected rights. Ford Motor Company ought to be held responsible.

### B.     CONTINUED HARASSMENT BY SUPERVISORS

Whether conduct amounts to a "hostile work environment" is evaluated in light of the particular facts and circumstances of the case. Lapka v. Chertoff, 517 F.3d 974 (2008). Harassing conduct does not need to be both severe and pervasive. One instance of conduct that is sufficiently severe may be enough, and conversely, conduct that is not particularly severe but that is an incessant part of the workplace environment may, in the end be pervasive enough and corrosive enough that it meets the standard for liability. Jackson v. County of Racine, 474 F.3d.493 (2007).

Mr. Lloyd was subjected to a hostile work environment. Mr. Lloyd has continued to be harassed by his supervisors at Ford Motor Company: Leslie Vincent, Roll Greene, Marvill Griffin, and Jack Pettite. A pattern of discriminatory and retaliatory conduct has occurred.

Leslie Vincent has been harassing Mr. Lloyd since 1998. Ms. Vincent was a named defendant in the first lawsuit. Ms. Vincent had repeatedly refer to Mr. Lloyd as "n*gger" and "black a**hole." (Exhibit A). After the lawsuit and settlement, the harassment did not end. Ford Motor Company did not fire nor remove Ms. Vincent as Mr. Lloyd's supervisor. Ms. Vincent stopped using racial profanity, however, the harassment did not end – often referring to Mr. Lloyd as a troublemaker. As recent as January 30, 2007, Mr. Lloyd filed a complaint with Labor Relations at Ford regarding the harassment.

Roll Greene and Marvill Griffin also referred to Mr. Lloyd as a "troublemaker." On July 1, 2004, Mr. Lloyd had filed a complaint with Labor Relations regarding Mr. Greene on July 1, 2004 and regarding Mr. Griffin on January 30, 2007.

Since the filing of this present lawsuit, the harassment has not ended. On August 28, 2008, Mr. Lloyd filed a complaint with Labor Relations detailing the harassment of Jack Pettite. Jack Pettite used code words such as "seniority" to degrade Mr. Lloyd. When Mr. Lloyd had a question regarding his assignment, Mr. Pettite stated "You know where it is. You're the one with 'seniority.'" (Exhibit P). Mr. Pettite, a Ford supervisor, treated Mr. Lloyd unfairly. It made it difficult for Mr. Lloyd to complete his assignments. Mr. Petitte, Ms. Vincent, Mr. Greene, and Mr. Griffin represent Ford and Ford's attitude to Mr. Lloyd. The environment created by Ford was hostile and stressful. The environment created by Ford humiliated Mr. Lloyd. Mr. Lloyd stood up for his rights, the right to report harassment and discrimination. Ford retaliated by making life at work much more difficult for Mr. Lloyd.

### 2.    DISCRIMINATION AND RETALIATORY ACTIONS PRIOR TO MAY 27, 2004 ARE TOLLED PURSUANT TO THE CONTINUING VIOLATION DOCTRINE.

The Continuing Violation Doctrine applies to toll all actions by Defendant Ford Motor Company pre-dating May 27, 2008.

The Continuing Violation Doctrine applies to tolls the statute of limitations period for 42 U.S.C. § 1981 actions. Moore v. Allstate Ins. Co., 928 F. Supp. 744, 753 (N.D.Ill. 1996). The Continuing Violation Doctrine permits a plaintiff to delay the filing of an EEOC charge, or in this case a complaint, until a series of acts by an employer "blossoms into a wrongful injury on which a suit can be based." Mull v. Abbot Laboratories, 2008 WL 2596664 (N.D.Ill. June 30, 2008).  It allows a plaintiff to base a claim on a time barred act with an action that is within the limitations period. Courts treat such combinations as one continuous act within the limitations period. Moore, at 750. A plaintiff must show that alleged acts of discrimination were part of an ongoing pattern of

discrimination and that at least one of the alleged acts of discrimination occurred within the relevant limitations period. Id.

The Continuing Violations Doctrine is commonly used is cases of "covert practice of discrimination" or "indirect retaliation" as is alleged in this case. A "covert practice discrimination/indirect retaliation" occurs when the victim had no reason to believe he was a victim of discrimination until a series of adverse actions established visible pattern of discriminatory treatment. Id.

The discrimination in Mr. Lloyd's suit that was filed in 1998 was obvious and direct – when his supervisors would single out and verbal abuse Mr. Lloyd by referring to him as "n*gger," "black a**hole," and "black mother f*cker." Once settled, Ford Motor Company, however, became subtle and underhanded about its discriminatory practices – by multiple unfilled promises of promotions and unjust disciplinary actions. Ford Motor Company shrouded discrimination and retaliation with "employment decisions." These employment decisions include the following:

- Between the time Mr. Lloyd filed his complaint in 1998 and settlement in 2001, [1] Mr. Lloyd's vehicle was vandalized twice.

- Between the time Mr. Lloyd filed his complaint in 1998 and settlement in 2001, Tyrone Lloyd, well qualified, bid on the position of "lift truck operator." Mr. Lloyd was not promoted, instead L.S. LaCoss, a man with less experience and who is white was given the position. Mr. Lloyd filed a union grievance, and Ford Motor Company was forced to promote Mr. Lloyd and provide him back pay. (Exhibit E and F)

- Mr. Lloyd applied for a position as a crane operator in 2003. Although well qualified, he did not receive the promotion.(Exhibit H)

---

[1] Federal Rule of Evidence 406 permits "evidence of habit of a person or the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." Although, Plaintiff may not base his claim entirely on events preceding the settlement, those events are relevant to show that there has been a long history of discrimination and retaliation on the part of Ford Motor Company in employment of Mr. Lloyd.

- Mr. Lloyd applied for a position in welder repair in 1998, 1999, 2003 and 2004. Although well qualified, Mr. Lloyd did not receive the promotion until he filed a union grievance in 2004.  At which time, the union forced the promotion. (Exhibits B, C, H, J, and K).

- Tyrone Lloyd was unjustly disciplined, as determined by union grievance committee, for a reasonable mistake made during training in 2003. (Exhibit I and K).

- Ford Motor Company agreed to promote Mr. Lloyd to welder repair in December 2004, but never assigned him to a job during the three (3) year period in which he was classified to do the work. Yet several times during this period of three years, other welder repair persons did receive assignments.

- As in <u>Reese</u>, Mr. Lloyd never received the pay raise and back pay he was promised on December 20, 2004.

Each "employment decision" on their own was not obvious of wrongful action; however, compounded the effect takes shape. Finally in November 2007 when the possibility of assignment was forever foreclosed, the repeated wrongful denials of promotion and assignment finally revealed itself for what it was – discrimination and retaliation by Ford Motor Company.

## V.     CONCLUSION

In conclusion, Defendant's Memorandum in Support of a Motion to Dismiss should be denied.

Respectfully submitted,

DINIZULU LAW GROUP, LTD.


By:     /s/Yao O. Dinizulu_____
        Yao O. Dinizulu
        Attorney for Plaintiff


Yao O. Dinizulu
DINIZULU LAW GROUP, LTD
221 North LaSalle, Suite 1100
Chicago, IL 60601
(312) 782-4117
Atty. No. 44300

JUDGE HOLDERMAN

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS   MAGISTRATE JUDGE BOBRICK
EASTERN DIVISION

TYRONE LLOYD,

        Plaintiff,

vs.

FORD MOTOR COMPANY, LESLIE
VINCENT and JOYCE McCAIN,
        Defendants.

No.:

JURY DEMANDED

# 98 C 5054

RECEIVED

AUG 14 1998

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## COMPLAINT AT LAW

NOW COMES the Plaintiff, TYRONE LLOYD, by and through his attorneys, JAY PAUL DERATANY & ASSOCIATES and the LAW OFFICE OF DENNIS FEINBERG, and complaining of Defendants, FORD MOTOR COMPANY (hereinafter "FORD"), LESLIE VINCENT and JOYCE McCAIN, states as follows:

## JURISDICTION AND VENUE

1.    This action arises under the Civil Rights Act of 1866, 42 U.S.C. 1981(a) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e), et seq., as further amended by the Civil Rights Act of 1991, which guarantee that all persons within the jurisdiction of the United States shall have the same right in every State to make and enforce contracts, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by all White citizens.  Plaintiff herein was deprived of his rights under said statute on the basis of his race.

-1-

2.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e), et seq., as further amended by the Civil Rights Act of 1991, provides in pertinent part that it shall be an unlawful employment practice for an employer: "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee because of such individual's race, color religion, sex, or national origin." 42 U.S.C. 2000(e)2(a)(2).

3.    The jurisdiction of this Court is founded upon the above Acts and 28 U.S.C. §1331 (a) in that the claims involve violations of federally protected rights against discrimination based on race. In addition, Plaintiff invokes the pendent jurisdiction of this Court over related or ancillary state law claims.

4.    On or about April 6, 1998, plaintiff filed a complaint of racial discrimination with the U.S. Equal Employment Opportunity Commission.  Plaintiff received a right-to-sue letter on or after July 3, 1998 advising him he had 90 days after receipt of the right-to-sue letter to file an action under Title VII in the U.S. District Court. (Said letter is attached hereto and incorporated herein as Exhibit "A").   This action is therefore timely filed. All administrative procedures, where required, have been exhausted.

-2-

12.  From January 1997 up through and including ~~March~~ *MAY* 1997, Defendant, FORD, by and through its employee, LESLIE VINCENT, repeatedly harassed, embarrassed, intimidated and abused plaintiff with derogatory, racially discriminatory and demeaning insults such as "nigger" and "Black Asshole".

13.  On a daily basis from January 1997 up through and including April 3 1998, while plaintiff was delivering racks to the stamping press line and removing filled racks from the line, Defendant, FORD, by and through its employee, JOYCE McCAIN, repeatedly harassed, embarrassed, intimidated and abused plaintiff with derogatory, racially discriminatory insults such as "nigger", "Black Asshole", "move your black ass" and "Black Mother Fucker".

14.  On or about November 6, 1997, Defendant, JOYCE McCAIN, battered the plaintiff by stomping on his foot.

15.  The racially discriminatory actions committed by plaintiff's supervisors, as outlined in paragraphs 12 and 13 above, constituted a deliberate attempt to degrade and humiliate plaintiff, as said acts occurred in the presence of plaintiff's co-workers.

16.  On or prior to May 9, 1997, plaintiff was qualified for and requested a job promotion to "fork truck operator"

17.  Defendant, FORD, failed to award the job of fork truck operator to plaintiff, giving it instead to an employee who had less seniority and is white.

18.    On or about November 6, 1997, defendant, FORD, failed to discipline JOYCE McCAIN for stomping on plaintiff's foot.

19.    Defendants, and each of them, intentionally discriminated against plaintiff based upon his race by verbally and physically harassing, intimidating and abusing him and by giving the job of fork truck operator to a white employee with less seniority than plaintiff.

20.    The Civil Rights Act of 1866, 42 U.S.C. 1981(a) guarantees that all persons within the jurisdiction of the United States shall have the same right in every State to make and enforce contracts, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by all White citizens.    Plaintiff herein was deprived of his rights, under said statute on the basis of his race, thus plaintiff was denied his rights under 42 U.S.C. 1981(a)

21.    Plaintiff was damaged in amounts to be proven at trial as a result of the violation of his rights including suffering lost wages, humiliation, embarrassment, stress, depression and other compensatory damages.

22.    Defendant, FORD, was at all times relevant hereto an employer who has more than 500 employees in each of 20 or more calendar weeks in 1998, located at its premises in Illinois, and as defined under 42 U.S.C. 1981(b)(3)(D).

WHEREFORE, Plaintiff, TYRONE LLOYD, prays for judgment in an amount to be proven at trial and to fairly compensate him for his

-5-

injuries, and for reasonable attorneys' fees and costs, and punitive damages in the amount of $ 300,000.00, and such other relief as the Court deems appropriate.

## COUNT II - RACIAL DISCRIMINATION-TITLE VII

1-9. As paragraphs 1 through 9 of this Count II, plaintiff realleges and restates paragraphs 1 through 9 of Count I as though fully set forth herein.

10. Plaintiff, TYRONE LLOYD, was at all times relevant hereto employed by Defendant, FORD, as a tow driver at its Chicago Stamping Plant.

11. Defendants, LESLIE VINCENT and JOYCE McCAIN, were at all times relevant hereto the duly appointed Supervisors of the plaintiff and, at all times material hereto, were acting in their official capacity as employees of Defendant, FORD.

12. From January 1997 up through and including March 1997, Defendant, FORD, by and through its employee, LESLIE VINCENT, repeatedly harassed, embarrassed, intimidated and abused plaintiff with derogatory, racially discriminatory and demeaning insults such as "nigger", "Black Asshole" and "Black Mother Fucker".

13. On a daily basis from January 1997 up through and including April 3 1998, Defendant, FORD, by and through its employee, JOYCE McCAIN, repeatedly harassed, embarrassed, intimidated and abused plaintiff with derogatory and racially

-6-

discriminatory insults such as "nigger", "Black Asshole" and "move your black ass".

14.  On or about November 6, 1997, Defendant, JOYCE McCAIN, battered the Plaintiff by stomping on his foot.

15.  The racially discriminatory actions committed by plaintiff's supervisors, as outlined in paragraphs 12 and 13 above, constituted a deliberate attempt to degrade and humiliate plaintiff, as said acts occurred in the presence of plaintiff's co-workers.

16.  On or prior to May 9, 1997, plaintiff was qualified for and requested a job promotion to "fork truck operator"

17.  Defendant, FORD, failed to award the job of fork truck operator to plaintiff, giving it instead to an employee who had less seniority and is white.

18.  On or about November 6, 1997, defendant, FORD, failed to properly discipline JOYCE McCAIN for stomping on plaintiff's foot or for the repeated discriminatory remarks and failed to properly discipline LESLIE VINCENT for the repeated discriminatory remarks.

19.  Defendants, and each of them, intentionally discriminated against plaintiff based upon his race by verbally and physically harassing, intimidating and abusing him and by giving the job of fork truck operator to a white employee with less seniority than plaintiff.

20.  Defendants, and each of them, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e), et seq., as further

amended by the Civil Rights Act of 1991, which provides in pertinent part that it shall be an unlawful employment practice for an employer: "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee because of such individual's race, color religion, sex, or national origin." 42 U.S.C. 2000(e)2(a)(2). Plaintiff was thus denied his rights under the above Act.

21. Plaintiff was damaged in amounts to be proven at trial as a result of the violation of his rights including suffering lost wages, humiliation, embarrassment, stress, depression and other compensatory damages.

WHEREFORE, Plaintiff, TYRONE LLOYD, prays for judgment in an amount to be proven at trial and to fairly compensate him for his injuries, and for reasonable attorneys' fees and costs, punitive damages and such other relief as the Court deems appropriate.

## COUNT III - ASSAULT AND BATTERY

1-9. As paragraphs 1 through 9 of this Count III, Plaintiff realleges and restates paragraphs 1 through 9 of Count I as though fully set forth herein.

10. Defendants, LESLIE VINCENT and JOYCE McCAIN, were at all times relevant hereto the duly appointed Supervisors of Plaintiff

-8-

and, at all times material hereto, were acting in their official capacity as employees of Defendant, FORD.

11.   From January 1997 up through and including March 1997, Defendant, by and through its employee, LESLIE VINCENT, repeatedly harassed, embarrassed, intimidated and abused plaintiff with derogatory, racially discriminatory and demeaning insults such as "nigger" and "Black Asshole".

12.   From January 1997 up through and including April 3 1998, Defendant by and through its employee, JOYCE McCAIN, repeatedly harassed, embarrassed, intimidated and abused plaintiff with derogatory, racially discriminatory insults such as "nigger", "Black Asshole" and "move your black ass".

13. On or about November 6, 1997, while plaintiff was performing his work at the FORD Chicago Stamping Plant, JOYCE McCAIN, an employee of the Defendant, and in the course of her employment and line of duty, did assault and batter, kick, harass and abuse the Plaintiff.

14.   At all times material hereto, the Defendants, FORD MOTOR CO., LESLIE VINCENT and JOYCE McCAIN, did assault and batter plaintiff in one or more of the following respects:

a.   Did batter, beat, assault, abuse and harass said plaintiff;

b.   Allowed its employees and agents, to assault, batter, intimidate and harass the Plaintiff;

15.   As a direct and proximate result of the foregoing, said defendant caused plaintiff to suffer injuries including but not

-9-

limited to physical injury and emotional pain and suffering, in a personal, permanent and pecuniary nature.

WHEREFORE, the Plaintiff, TYRONE LLOYD, demands judgment against FORD MOTOR CO., in a reasonable sum in excess of FIFTY THOUSAND AND NO/100 ($ 50,000.00) DOLLARS, plus reasonable attorneys' fees, costs of this suit and such other relief as this Court may deem appropriate.

## COUNT IV - NEGLIGENT SUPERVISION

1-14. As paragraphs 1 through 14 of this Count IV, Plaintiff realleges and restates paragraphs 1 through 14 of Count I as though fully set forth herein.

14. On November 6, 1997, the Plaintiff was then and there at the premises performing his job, and at that time was assaulted, battered and kicked as hereinbefore alleged.

15. At all times mentioned, the Defendant, FORD, knew of the conduct of JOYCE McCAIN and LESLIE VINCENT.

16. At all times mentioned, it was the duty of the Defendant, FORD, to exercise toward their employee a duty of due care and caution for plaintiff's safety.

17. At all times mentioned, it was the duty of the Defendant, FORD, as supervisor of JOYCE McCAIN, to exercise proper control and supervision of JOYCE McCAIN so as to prevent her from assaulting and battering the Plaintiff.

-10-

18. Disregarding their duty as stated, the said Defendants, and each of them, were then and there guilty of one or more of the following careless and negligent acts or omissions which proximately caused the assault, battery and harassment to occur to the plaintiff:

    a.   Carelessly and negligently, maintained and managed their staff/department;

    b.   Failed to adequately protect its employees;

    c.   Failed to properly supervise its employees and especially its managers so as to prevent assault and battery to one of their employees;

    d.   Failed to adequately protect the Plaintiff from an assault and battery committed by a Ford supervisor while on duty;

    e.   Failed to protect their employee when they knew, or in the exercise of a reasonable degree of care, should have known, that he may be assaulted and battered.

19. As a direct and proximate result of one or more of the aforesaid careless and negligent acts or omissions of the Defendant, FORD, the aforestated supervisor, JOYCE McCAIN, assaulted, battered, kicked and harassed the Plaintiff, TYRONE LLOYD.

20. As a direct and proximate result of the foregoing Plaintiff, TYRONE LLOYD, did sustain and suffer injuries including but not limited to emotional and physical injuries of a personal, permanent and pecuniary nature.

WHEREFORE, the Plaintiff, TYRONE LLOYD, demands judgment against the Defendant, FORD MOTOR COMPANY, in an amount in excess of FIFTY THOUSAND AND NO/100 ($50,000.00) DOLLARS.

## COUNT V

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

1-11.  As paragraphs 1 through 11 of this Count V, Plaintiff realleges and restates paragraphs 1 through 11 of Count I as if fully set forth herein.

12.  The Defendant, FORD, by and through its employees, inflicted bodily injury and harassment upon the plaintiff by kicking and battering him and by deliberately using racial slurs and derogatory comments about plaintiff's race such as "nigger" and "black asshole", in the presence of at least two co-workers of plaintiff, with the deliberate intent to humiliate and degrade plaintiff.

13.  On or about November 6, 1997 and continuing thereafter, Defendant, FORD, by the acts as set forth above,  intended to and did cause severe emotional distress to plaintiff, TYRONE LLOYD, or recklessly disregarded the probability of causing emotional distress to plaintiff, TYRONE LLOYD by intimidating, harassing, degrading and humiliating plaintiff.

14.   At all times material hereto, Defendant, FORD, knew or should have known of the conduct of its supervisors and yet failed to take any remedial or disciplinary action.

15.   As a direct result thereof, plaintiff has thereby suffered pain, humiliation, degradation, mental anguish and distress for which he has sought psychological treatment, and he will continue to suffer injuries of a personal, permanent and pecuniary nature.

16.   It was then and there the duty of Defendant, FORD, to exercise a reasonable duty of care toward the aforesaid plaintiff, TYRONE LLOYD.

17.   Contrary to the aforesaid duty owed by the Defendant to the plaintiff, TYRONE LLOYD, Defendant, FORD, did inflict pain, suffering, embarrassment, humiliation and intimidation upon plaintiff and thereby intentionally inflicted emotional distress upon plaintiff, TYRONE LLOYD.

WHEREFORE, the Plaintiff, TYRONE LLOYD, demands judgment against the Defendant, FORD MOTOR CO., in an amount in excess of FIFTY THOUSAND AND NO/100 ($50,000.00) DOLLARS.

## COUNT VI

## PENDENT CLAIM BASED ON THE LAWS OF ILLINOIS

1-14.  As paragraphs 1 through 14 of this Count VI, Plaintiff realleges and restates paragraphs 1 through 14 of Count I as though fully set forth herein.

15.  The Defendant, FORD, did deliberately, willfully and wantonly injure Plaintiff, TYRONE LLOYD, and as a direct and proximate result of one or more of the aforesaid acts by the Defendant, FORD, the Plaintiff, TYRONE LLOYD, did suffer severe injuries, medical bills, disability, loss of wages and pain and suffering.

16.  As a direct and proximate result of one or more of the aforesaid acts by the Defendant, FORD, TYRONE LLOYD then and there did suffer severe emotional distress.

17.  As a direct and proximate result of one or more of the aforesaid acts by the Defendant, FORD, plaintiff did suffer and will continue to suffer injuries of a personal, permanent and pecuniary nature.

WHEREFORE, the Plaintiff, TYRONE LLOYD, demands judgment against the Defendant, FORD, as follows:

A.  Award to the Plaintiff, TYRONE LLOYD, a sum to be determined in excess of the statutory amount of $ 50,000.00 as compensatory damages.

B.  Award to the Plaintiff $5,000,000.00 as punitive damages.

C.  Award to Plaintiff interest to commence from the date of injury, at the rate of 12% compounded annually.

D.     Grant such other relief as law and equity allows, including costs and reasonable and interim and final attorneys' fees.


Respectfully submitted,

One of the attorneys for the Plaintiff.


Jay Paul Deratany, Esquire
**JAY PAUL DERATANY & ASSOCIATES**
120 North LaSalle Street, Suite 2900
Chicago, Illinois 60602
(312)857-7285


Dennis M. Feinberg, Esq.
**LAW OFFICES OF DENNIS M. FEINBERG**
221 North LaSalle Street, Suite 1100
Chicago, Illinois 60601
(312) 236-9435

# Prairie State College

202 South Halsted Street
Chicago Heights, IL 60411-8226
(708) 756-3110 Fax (708) 755-2587

December 10, 1996

To Whom It May Concern:

The following results are from a welding test taken by Tyrone Lloyd in the Welding Lab at Prairie State College.

Joint Design
> 3/8 Steel Plate
> Groove Joint
>> Vertical up (3G)
> 3/32 Root Opening
> 70° Groove Angle
> No Backup Strip

Filler Metals

| | | |
|---|---|---|
| 1st Pass | 1/8 - 6010 |
| 2nd Pass | 3/32 - 7018 |
| 3rd Pass | 1/8 - 7018 |

Test Results

| | Visual Inspection | Face Bend | Root Bend |
|---|---|---|---|
| VERTICAL UP | Passed | Passed | Passed |

Sincerely,

David Doner
Coordinator, Welding

*printed on recycled paper*

TL1 0150

## JOB OPENING BID CARD

Fill out this card completely and submit it in the box provided in the Hourly Personnel Lobby.

Date: _11-5-98_          Posting #: _98-045_          Posting Classification: _Welder Repair_ 257560?

Name: _Tyrone J Cloyd_                    Social Security #: _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_

Seniority Date: _CB-26-91_        Date of entry (skilled trades only): _____

Current Classification: _Tow Driver_          Current Shift: _1st_

Qualifications: _Certified Welder, 2½ years exp. Electronics_
_Repairman, 6 yrs exp._

---

## JOB OPENING BID CARD                    _Copy_

Fill out this card completely and submit it in the box provided in the Hourly Personnel Lobby.

Date: _8-2-99_          Posting #: _99-042_          Posting Classification: _Welder Repair_

Name: _Tyrone Cloyd_                    Social Security #: _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_

Seniority Date: _8-26-91_        Date of entry (skilled trades only): _____

Current Classification: _Tow Driver_          Current Shift: _1 3&1st_

Qualifications: _Good Worker And Cetified Welder_

# CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA ☒ EEOC | 210982176 |

Illinois Dept. of Human Rights _____ and EEOC
*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Mr. Tyrone J. Lloyd | (708) 335-6120 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 3703 Peachgrove Lane, Hazel Crest, IL 60429 | | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| FORD MOTOR CO | Cat D (501 +) | (708) 757-5700 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 1000 E. Lincoln Highway, P.O. Box 6, East Chicago Hgts, IL 60411 | | 031 |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))* | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN ☐ RETALIATION ☐ AGE ☐ DISABILITY ☐ OTHER *(Specify)* | EARLIEST          LATEST            04/06/98 ☒ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

I. I was hired by the Respondent on August 26, 1991. I am currently employed as a Tow Driver. On November 11, 1997, I was kicked and stepped on by a Production Supervisor. In late November or early December, 1997, I complained to Respondent that the Production Supervisor has made derogatory racial remarks. To date, the Production Manager continues to make derogatory racial remarks to me and to other employees.

II. I believe that I have been discriminated against on the basis of my race, black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| | |
|---|---|
| ☐ I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - *(When necessary for State and Local Requirements)* I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| April 6, 1998    *Tyrone J Lloyd* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |

## JOB OPENING BID CARD — Copy

Fill out this card completely and submit it in the box provided in the Hourly Personnel Lobby.

Date: 4/1/99          Posting #: 99-014          Posting Classification: 5200360 Lift Truck Oper

Name: Tyrone Lloyd          Social Security #: 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

Seniority Date: 08-26-91     Date of entry (skilled trades only): _____

Current Classification: Tow Driver          Current Shift: 1st Shift

Qualifications: Good Worker. Would Like To Stay on 1st Shift, If I Get Job.

---

## Industrial Truck Daily Log — Electric Powered

| | TYPE | MAKE  Tow Moran | | TRUCK № |
|---|---|---|---|---|

TIONS:
starting your
ed duties, check
ruck and indicate
ms specified
een checked.

| | BATTERY | | | | | | BRAKES | | | | LIGHTS | | | | | |

| | SHIFT | CELL CAPS | CABLES | CONNECTORS | RETAINER | DISCHARGE INDICATOR | HYDRAULIC OIL | STEERING | SERVICE | EMERGENCY | HORN | HEAD | TAIL | FENDER | WIRES | ATTACHMENTS | SAFETY SEAT | OIL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| K | 1 | | | | | | | | | | | | | | | | | |
| EQUIRES | 2 | | | | | | | | | | | | | | | | | |
| EPAIR | 3 | | | | | | | | | | | | | | | | | |

| HOUR METER READING (START OF SHIFT) | SIGNATURES | | NOTE |
|---|---|---|---|
| | DRIVER | FOREMAN | HOUR METERS ARE USED TO DETERMINE TIME FOR MAINTENANCE INSPECTIONS AND TRUCK LIFE. |
| 1432 | | | |

3382

# UNION GRIEVANCE
(GRIEVANCE STARTING SECOND STAGE ONLY)

GRIEVANCE  O 98812

Bldg. or Unit _C. H. S. P_____ Local No. _588_____

Date ~~JUNE 9, 1999~~ APRIL 9, 1999 C̶ M̶

Employee
Name _TYRONE LLOYD_____ Badge No. _358·66·2284_

Shift _1ST_____ Seniority _8-26-91_ Dept. _52_

Classification _IND TOW TRK OPERATOR_

Employee
Signed: _Tyrone J. Lloyd_

Not necessary to fill in enclosed space when Grievance
concerns Union Rights ONLY

Date Stamp Submission

_[signature]_
4-9-99

Nature of Grievance __JOB POSTING AGREEMENT_____

Violation of Article _____IV_____ Section _2 A_

Statement of Case __THE AGGRIEVED PROTESTS THE SELECTION_
_OF L.S. LACOSS (304.40·5149) FOR IND LIFT TRK OPERATOR._
_BOTH THE AGGRIEVED AND THE PROTESTED (LACOSS)_
_HAVE THE SAME MERIT AND ABILITY, HOWEVER_
_THE AGGRIEVED IS A TOW DRIVER AND THEREFORE_
_SHOULD RECEIVE PREFERENCE OVER OTHER APPLICANT_

The Adjustment Requested: __THE AGGRIEVED IS REQUESTING TO BE_
_PROMOTED TO IND LIFT TRK OPERATOR AND THAT THE_
_PROTESTED BE REMOVED. THE AGGRIEVED ALSO REQUES_
_TO BE PLACED ON IMMEDIATELY AND BE MADE WHOLE OF A_
_LOST BENEFITS & WAGES._

Signed (Bargaining Committee) _Linda J. Pitco_____

| Date Stamp Disposition | Disposition by Company |
|---|---|
| | |
| | |
| | |
| | [Signed]_____ |
| | (Company Representative) |

# UNADJUSTED GRIEVANCE
### (3rd Stage - Plant Committee)

| | | | |
|---|---|---|---|
| **Bldg. or Unit** | C. H. P | | |

**Date of Origin**   3/12/04     **Grievance #**   S1024

Local 588

**Date this Grievance**

**Disposition (Employee Grievance)**

   Unsatisfactory

_____
By Foreman

**Disposition (Grievance Record)**

   Unsatisfactory

_____
By LRD Rep

**Employee Name**   TYRONE J. LLOYD     **Badge #**   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     **Shift/Dept**   1-52

**Additional Aggrieved**

**Violation of Article**   IV     **Section**   2(A), 3

**Nature of Grievance**   JOB POSTING - PROMOTION, UNJUST DISCIPLINE

**Statement of Case**   ON 3/12/04 THE AGGRIEVED WAS OVERLOOKED AND DENIED THE JOB PROMOTION OF WELDER REPAIR. INSTEAD IT WAS GIVEN TO E.E. ROSINE (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, SEN. 6/8/92). THIS DENIAL WAS BASED SOLELY ON A DISCIPLINARY ACTION ON 4/9/03. THIS INCIDENT WHICH WAS NEVER GRIEVED TO HIS REQUEST, WAS SOLELY UNFOUNDED AND WRONG. HE WAS IN TRAINING AND ALLOWED TO MAKE REASONABLE MISTAKES, YET WHEN HE MADE A MISTAKE HE WAS UNJUSTLY DISCIPLINED AND DISQUALIFIED. THIS DISCIPLINARY ACTION SHOULD NOT HAVE CAUSED THE AGGRIEVED THE JOB PROMOTION FOR WHICH HE HAS MERIT, ABILITY AND SENIORITY.

**Adjustment Requested**   THE UNION AND THE AGGRIEVED AGREE THAT THIS GRIEVANCE IS MERITORIOUS AND THAT THE AGGRIEVED BE GIVEN THE WELDER REPAIR PROMOTION IMMEDIATELY AND BE MADE WHOLE OF ALL LOST WAGES.

Signed _____
(Chairman)

**Disposition (Plant Committee)**   THE AGGRIEVED EMPLOYEE WAS PROPERLY BYPASSED FOR THIS OPPORTUNITY. SETTLED AND CLOSED. SETTLED 3RD STAGE 12/20/04 - IN FULL AND COMPLETE SETTLEMENT AND WITHOUT PRECEDENT TO ANY ISSUE, THE AGGRIEVED EMPLOYEE WILL RECEIVE AN OPPORTUNITY AS A WELDER REPAIR PERSON. SETTLED AND CLOSED.

Signed _____
(Company Representative)

Date _____

prm F-3

All Grievances Must Be "Date Stamped" By Company Representative On Date Presented

# JAY PAUL DERATANY & ASSOCIATES

Jay Paul Deratany*
John S. LaMantia
*Licensed in Illinois
and Florida

**Chicago Office**

120 North LaSalle Street
Suite 2900
Chicago, Illinois 60602
Telephone: (312) 857-7285
Fl. Res.: (800) 529-7285
Facsimile: (312) 236-0781

### RE:  TYRONE LLOYD V. FORD MOTOR COMPANY
(Case No. 98 C 5054)

**Florida Office**

2426 First Avenue North
St. Petersburg, Florida 33713
Telephone: (727) 327-2287
Facsimile: (727) 327-2289

## TERMS OF CONFIDENTIAL SETTLEMENT AGREEMENT

This letter agreement will confirm the primary terms of the confidential settlement agreement

and release (hereinafter "Settlement") reached this date between Plaintiff, TYRONE LLOYD

("Lloyd") and Defendant, FORD MOTOR COMPANY ("FORD")(hereinafter collectively, "the

parties"), by and through their respective counsel, to settle the lawsuit currently pending in the federal

district court for the Northern District of Illinois styled Lloyd v. Ford Motor Company (Case No.

98C5054) (hereinafter "the Lawsuit"), as well as any and all potential claims between the parties as

of the date of this settlement.  It is understood that each counsel signing below has the authority to

effect settlement on behalf of his respective client in the manner and according to the terms set forth

herein.

The parties agree that they will prepare and execute a formal Settlement Agreement and

Release, which will more fully set forth the primary and ancillary terms of the Settlement. The primary

terms upon which the parties have agreed under this Settlement include the following:

1.  Ford agrees to pay Lloyd and his attorneys (or their appropriate legal designees)
    the sum of $55,000.00.

2.  In consideration of the payment referred to in Paragraph 1, Lloyd agrees to release
    and forever discharge Ford from any and all claims, damages, lawsuits, injuries,
    liabilities or causes of action of whatever kind or nature, whether known to him or
    not, arising directly or indirectly from any act or omission committed by Ford prior
    to the date hereof, with the sole exception of any pending workers compensation
    claims for on the job injuries suffered by Lloyd to be identified in the Settlement
    Agreement and Release.

3.    Lloyd and his counsel agree that they will keep the terms and conditions of this Settlement in utter, absolute and strictest confidence and secrecy, and neither the sum included in this settlement agreement, nor any other term or provision may be revealed by Lloyd or by any member of his immediate family, without prior written permission of Ford, except that he may reveal the terms and provisions of this settlement agreement consistent with and limited to the terms of an order of a Court of competent jurisdiction upon notification, and he may provide such information to accountants, tax consultants, to government taxing authorities, the United States Bankruptcy Trustee for the matter of 98 B 36200, and to physicians and/or counselors acting in a professional capacity without written permission. If asked by other regarding this settlement, Lloyd may say only that the matter has been resolved.

4.    Lloyd agrees that neither he nor any member of his immediate family shall disclose any information concerning his allegations in the pending lawsuit or any other claim that he has agreed to release hereunder to any journalist or other agent of print, radio, television or internet media.

5.    Lloyd agrees to pay FORD the sum of Fifty Thousand dollars ($50,000.00) as liquidated damages in the event of a breach of Paragraph No. 3 or No. 4 of this Settlement. Lloyd further agrees to indemnify and hold harmless FORD from any expenses or liabilities incurred, including but not limited to attorneys' fees as a result of such breach.

6.    Lloyd understands that FORD denies liability as to all claims but desires to end all controversy and settle all disputes between them. Lloyd further understands and agrees that neither this Settlement nor any action taken hereunder is to be construed as an admission by FORD that it has violated any local, state or Federal law, statutory or common, and FORD expressly denies any violation of such law.

7.    Lloyd acknowledges that the payment referred to in Paragraph No. 1 herein, is attributable to payment on account of alleged personal injuries related to emotional distress, with physical manifestation of said emotional distress, and none of the payments are intended to be the payment of wages. FORD shall issue a 1099 tax form to each of Lloyd and his attorneys at the time of such payments. Lloyd understands and agrees that should the Internal Revenue Service or any other taxing authority force FORD to pay any taxes, penalties, or interest, based on claims by the taxing authority that any amount should have been deducted from the proceeds of this Settlement or that any amount was improperly reported, or not reported, he will fully indemnify FORD for such amount.

8.    Upon Lloyd's execution of the formal Settlement Agreement and Release , Lloyd agrees to immediately withdraw any pending claims of discrimination filed with the U.S. EEOC and/or the Illinois Department of Human Rights against FORD.

9.    Within fifteen days after Lloyd's execution of the Formal Settlement Agreement and

Release, and the payment of the sum referred to in Paragraph 1 hereof, the parties agree to file a stipulation dismissing Lloyd's pending lawsuit against FORD with prejudice, with each party to bear his or its own expenses, costs and attorney's fees.

10. The parties expressly acknowledge and agree that this Settlement is contingent upon approval of the sum to be paid in Paragraph 1 hereof by the U.S. Bankruptcy Court in the pending bankruptcy proceedings styled In re Tyrone & Zonraller Lloyd, 98 B 36200 pending in the Northern District of Illinois ("Lloyd Bankruptcy"). The parties further acknowledge and agree that this Settlement is contingent upon ensuring that the terms of settlement and the sum to be paid in Paragraph 1 hereof will be placed under proper seal or otherwise protected from disclosure as a matter of public record in the Lloyd Bankruptcy. FORD has agreed to this Settlement upon the express understanding that the bankruptcy trustee in the Lloyd Bankruptcy has represented to LLOYD's counsel that he/she will recommend approval by the bankruptcy court of the sum to be paid in Paragraph 1 hereof, and further has represented that the sum to be paid under Paragraph 1 hereof shall not become a matter of public record. The parties agree that they will cooperate and take all steps necessary to ensure that the terms of settlement and the amount to be paid under Paragraph 1 hereof are placed under proper seal or otherwise protected from disclosure as a matter of public record in the Lloyd Bankruptcy.

11. This agreement is entered into between FORD and Lloyd with the mutual and expressed understanding that the United States Trustee for the Lloyd Bankruptcy will file any and all settlement motions, documents, papers, etc., under seal with the U.S. Bankruptcy Court, and that under no circumstances will the settlement amount or terms of settlement be disclosed in any public record or file in regard to the Lloyd Bankruptcy. The U.S. Trustee has advised Plaintiff's counsel that the motion for approval of settlement necessary in the Lloyd Bankruptcy will be filed under seal and subject to the provisions of the confidentiality agreement entered into between the parties.

COUNSEL FOR PLAINTIFF,
TYRONE LLOYD

Scott Clark, Esq.
Jay Deratany and Associates

Dated:  August 8, 2000

COUNSEL FOR DEFENDANT,
FORD MOTOR COMPANY

James R. Ward
Berkowitz, Feldmiller, Stanton,
Brandt, Williams & Stueve

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is made and entered into by and between Tyrone Lloyd ("Lloyd") and Ford Motor Company, a corporation ("Ford") (defined herein for all pertinent purposes to include its officers, directors, employees, successors, assigns, authorized agents, contractors, vendors, affiliates and subsidiaries).

WHEREAS, on or about August 14, 1998, Lloyd filed a Complaint against Ford in the United States District Court for the Northern District of Illinois, Civil Action Number 98C5054, styled "*Lloyd v. Ford Motor Company et al.*" (the "Civil Action").

WHEREAS, on August 8, 2000, the parties to the Civil Action reached agreement upon the terms of a confidential settlement and release by and through their respective counsel, who confirmed the primary terms of the parties' agreement by executing a letter agreement dated August 8, 2000, and further agreed thereby to execute a duly prepared written instrument to carry out the parties' intentions; and

WHEREAS, without any admission of liability or fault by any party, Lloyd and Ford now desire to settle and compromise certain disputes between them;

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, Lloyd and Ford do hereby agree as follows:

1.     Ford agrees to pay Lloyd and his attorneys (or their appropriate legal designees) the sum of fifty-five thousand dollars ($55,000.00).

2.     In consideration of the payment referred to in Paragraph 1 hereof, and for other good and valuable consideration as set forth herein, Lloyd does hereby, on behalf of himself and his heirs, executors, administrators, and successors, release and forever discharge Ford, and its officers, directors, shareholders, employees, agents, attorneys, representatives, successors and assigns (the

1 of 7

"Released Parties") from any and all claims, damages, lawsuits, injuries, liabilities or causes of action, of whatsoever kind or nature, whether known to him or not, arising directly or indirectly from any act or omission committed by the Released Parties prior to the date hereof, including, without limitation, those claims which were or could have been asserted in the Civil Action. Lloyd specifically agrees to release the Released Parties from any claim he may have under the Illinois Human Rights Act and any claim he may have for intentional or negligent infliction of emotional distress, negligent hiring or retention, and assault and battery.

3.      Lloyd agrees to release the Released Parties from all claims he may have under any laws which are meant to protect employees in their employment relationships, including, without limitation, claims under Title VII of the Civil Rights Act of 1964, the Equal Pay Act, 42 U.S.C. " 1981, 1983 and 1985, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the Fair Labor Standards Act, the Labor Management Relations Act, Workers' Compensation laws and Unemployment Compensation laws.  Lloyd also agrees to release the Released Parties from any claims for attorneys' fees, costs or expenses.

4.      Notwithstanding the provisions of Paragraphs 2 and 3 of this Agreement, Lloyd does not release the Released Parties from any pending workers compensation claims for on the job injuries suffered by Lloyd during the course of his employment with Ford.

5.      Lloyd and his counsel agree that they will keep the terms and conditions of this Agreement in utter, absolute and strictest confidence and secrecy. Neither the sum included in this Agreement nor any other term or provision may be revealed by Lloyd, Lloyd's counsel, or by any member of Lloyd's immediate family, without prior written permission of Ford, except that Lloyd and his counsel may reveal the terms and provisions of this Agreement consistent with and limited to the terms of an order of a court of competent jurisdiction upon notification and may provide such

information to accountants, to tax consultants, to government taxing authorities, to the United States Bankruptcy Trustee in the pending bankruptcy proceedings styled, *In re Tyrone & Zonraller Lloyd*, 98 B 36200, pending in the Northern District of Illinois (hereinafter "Lloyd Bankruptcy"), and to physicians and/or counselors acting in a professional capacity, without written permission. If asked by others regarding this settlement, Lloyd and his counsel may say only that "the matter has been resolved."

6.     Lloyd agrees that neither he nor any member of his immediate family shall disclose any information concerning his allegations in the Lawsuit or any other claim against Ford to any journalist or other agent of print, radio, television or internet media.

7.     Lloyd agrees to pay Ford the sum of fifty thousand dollars ($50,000.00) as liquidated damages in the event of a breach of any provision contained in Paragraphs 5 or 6 of this Agreement. Lloyd further agrees to indemnify and hold harmless Ford or any of the Released Parties from any expenses or liabilities incurred, including but not limited to attorneys' fees, as a result of such breach.

8.     Lloyd understands that Ford denies liability as to all claims but desires to end all controversy and settle all disputes between them. Lloyd further understands and agrees that neither this Agreement nor any action taken hereunder is to be construed as an admission by Ford that it has violated any local, state or federal law, statutory or common, and Ford expressly denies any violation of such law.

9.     Lloyd acknowledges that the payment referred to in Paragraph 1 herein is attributable to payment on account of alleged personal injuries related to emotional distress, with physical manifestation of said emotional distress, and none of the payments are intended to be the payment of wages. Ford shall issue a 1099 tax form to each of Lloyd and Jay Deratany and

Associates at the time of such payments. Lloyd understands and agrees that should the Internal Revenue Service or any other taxing authority cause Ford to pay any taxes, penalties, or interest, based on claims by the taxing authority that any amount should have been deducted from the proceeds of this settlement or that any amount was improperly reported, or not reported, he will fully indemnify Ford for such amount.

10.     Upon Lloyd's execution of this Agreement, Lloyd agrees to immediately withdraw any pending claims of discrimination filed with the U.S. EEOC and/or the Illinois Department of Human Rights against Ford.

11.     Within fifteen days after Lloyd's execution of this Agreement and payment of the sum referred to in Paragraph 1 hereof and approval of the Agreement by the United States Bankruptcy Court in the Lloyd Bankruptcy, the parties agree to file a stipulation dismissing the Civil Action with prejudice with each party to bear his or its own expenses, costs and attorneys' fees.

12.     Lloyd and Ford expressly acknowledge and agree that this Agreement is contingent upon approval of the sum to be paid in Paragraph 1 hereof by the United States Bankruptcy Court in the pending bankruptcy proceedings styled, *In re Tyrone & Zonraller Lloyd*, 98 B 36200, pending in the Northern District of Illinois. Lloyd and Ford further acknowledge and agree that this Agreement is contingent upon ensuring that the terms of settlement and the sum to be paid in Paragraph 1 hereof will be placed under proper seal or otherwise protected from disclosure as a matter of public record in the Lloyd Bankruptcy. Lloyd and Ford further agree that they will cooperate and take all steps necessary to expedite the presentation of this Agreement by the United States Trustee for the Lloyd Bankruptcy to the United States Bankruptcy Court for approval of the sum to be paid in Paragraph 1 hereof. Lloyd and Ford further agree that they will cooperate and

take all steps necessary to ensure that the United States Trustee for the Lloyd Bankruptcy will file any and all motions, documents, and other papers relating to this Agreement, under seal with the United States Bankruptcy Court, and that under no circumstances will the sum to be paid in Paragraph 1 hereof, or the terms of this Agreement, be disclosed in any public record or file, including the Lloyd Bankruptcy.

13.    The parties acknowledge and agree that this document embodies the entire Agreement between the parties, and no party has made any representation or promise to do or refrain from doing any act or thing not specifically herein set forth.

14.    The parties understand and agree that if any term or provision of this Agreement is construed by any court of competent jurisdiction to be unenforceable or void by operation of law, the remainder of this Agreement shall remain effective and enforceable.

15.    In executing this Agreement, each of the undersigned parties acknowledges that such party has read the entire Agreement, has consulted with counsel and understands that the terms hereof are contractually binding and not a mere recital, and agrees that such party is not relying on any statement or representation made by any party hereby released or any other attorneys, agents, servants, or employees of any party released concerning any matter and is relying upon the judgment of such party and upon advice of counsel. Each of the undersigned parties further agrees that such party has voluntarily entered into this Agreement, without coercion or duress.

16.    Each signatory to this Agreement represents and warrants that he or he has full power, authority and legal right, and has completed all proceedings and obtained all approvals and consents necessary, to execute, deliver and perform this Agreement, and that no signatory has assigned any claims, actions, causes of actions, rights or obligations released and discharged under the terms of this Agreement.

17.     All parties to this Agreement agree to sign or execute all necessary documents, and to take all necessary actions, required to obtain the above-noted dismissals with prejudice.

18.     Neither this Agreement nor any of its provisions may be changed, waived, discharged or terminated, except by an instrument in writing signed by the person or entity against whom enforcement of the change, waiver, discharge or termination is sought.

19.     This Agreement shall be governed by and construed under the laws of the State of Illinois.

20.     This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which together shall constitute one instrument. All fully executed copies of the Agreement are to be considered duplicate originals, equally admissible in evidence.

IN WITNESS WHEREOF, the parties hereto, or their authorized representatives, have affixed their signatures as their own free act and deed as follows:

Tyrone Lloyd

Date: _March 26, 2001_

Attested and Approved as to Form:

_____
Jay Paul Deratany
Scott Clark
JAY PAUL DERATANY & ASSOCIATES
120 North LaSalle Street, Suite 2900
Chicago, Illinois 60602

Date: _____

FORD MOTOR COMPANY

By: _____

Name: _____

Title: _____

Date: _____

Attested and Approved as to Form:

_____
W. Perry Brandt
James R. Ward
BERKOWITZ, FELDMILLER, STANTON,
BRANDT, WILLIAMS & STUEVE, LLP
Two Brush Creek Boulevard, Suite 550
Kansas City, Missouri  64112

Date: _____

# JOB OPENING BID CARD

3046

Fill out this card completely and submit it in the box provided in the Hourly Personnel Lobby.

Date: _Mar. 7, 2003_    Posting #: _Elect To Crane Repair_    Posting Classification: _03-051_

Name: _Tyrone Lloyd_ _____    Social Security #: _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_ _____

Seniority Date: _8-26-91_    Date of entry (skilled trades only): _____

Current Classification: _Tow Truck Driver_ _____    Current Shift: _1st_

Qualifications: _Worked on Crane shortly as TPO on 14 Line_ _____

_Filed grievance / did not get job_ _____

_____

_____


# JOB OPENING BID CARD

3032

Fill out this card completely and submit it in the box provided in the Hourly Personnel Lobby.

Date: _3-3-03_    Posting #: _03-020_    Posting Classification: _2100070_ _CRANE OPERATOR_

Name: _Tyrone J. Lloyd_    Social Security #: _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_

Seniority Date: _8-26-91_    Date of entry (skilled trades only): _____

Current Classification: _Tow Truck Driver_    Current Shift: _1st_

Qualifications: _Was Trained on Crane As A TPO on 14 Line_

_Shortly Back In 1994._ _____

_____

_____

POSTED

**Ford Motor Company** **Disciplinary Action Report**

| | SHIFT 3 | DISPOSITION BY: FOREMAN ☐  LABOR RELATIONS ☑ | DATE 1/9/03 |

SOCIAL SECURITY OR BADGE NO. 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

NAME Tyron Lloyd

PLANT CASP

COMPANY SENIORITY 8/26/91

CLASSIFICATION Crane Operator

DEPT. NO. 17

PRESENT CHARGE Careless Workmanship

EMPLOYE DESIRES UNION REPRESENTATION  YES ☐  NO ☐

EMPLOYE'S SIGNATURE (IF NO)

PENALTY AND DATE ASSESSED K3W + Disqualification

COMMITTEEMAN SHOULD SIGN HERE IF HE RECEIVED NOTIFICATION OF THIS ACTION

FOREMAN'S SIGNATURE

LABOR RELATION'S REPRESENTATIVE SIGNATURE

FACTS SUPPORTING CHARGE (LIST IN DETAIL) - ATTACH ADDITIONAL FORM IF MORE SPACE NEEDED

Mr. Lloyd tipped a die while the die was still inside the press. He was supposed to bridge the die but instead he lifted it straight up. He did not respond to die setters' command to stop. The accident could have caused major injuries and LR & Safety have deemed it unsafe to leave Mr. Lloyd in the Crane Operator Classification.

52-1

IND REL APR 91  **4600**  (Previous editions may not be used)

**LABOR RELATIONS COPY**

2851-0529-0201 ©2000, Moore North America. All rights reserved. -0305

RELATIONS COPY

# JOB OPENING BID CARD

4208

Fill out this card completely and submit it in the box provided in the Hourly Personnel Lobby.

Date: _2-4-04_    Posting #: _04-04_    Posting Classification: _Welder Repair 2575060_

Name: _Tyrone S. Lloyd_    Social Security #: _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_

Seniority Date: _8-26-91_    Date of entry (skilled trades only): _____

Current Classification: _Tow Truck Driver_    Current Shift: _First (1st)_

Qualifications: _I have previous experience in this field. Electronics Repairman (1989) Certified Welder (1996); which is part of Welder Repair Job description. See Worker + Items in Job folder._

# UNION GRIEVANCE
(GRIEVANCE STARTING SECOND STAGE ONLY)    GRIEVANCE **S** 1024

Bldg. or Unit___C.H.S.P___ Local No. 588

Date___3-12-04___

---

Employee Name___Tyrone J. Lloyd___ Badge No. 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

Shift___1___ Seniority 8-26-91 Dept. 52

Classification___Industrial Tow Driver___

Employee Signed: ___Tyrone J. Lloyd___

Not necessary to fill in enclosed space when Grievance concerns Union Rights ONLY

Date Stamp Submission

[signature] 3/16/04

---

Nature of Grievance __Job Posting - Promotion, Unjust Discipline__

Violation of Article __IV__                                    Section __2A, 3__

Statement of Case __On 3-12-04, Mr. Lloyd was overlooked and denied the__
__Job promotion of Welder Repair. Instead it was given to__
__E.B. Rosine (seniority, 6-8-92). This denial was based soley on__
                  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
__an disciplinary action on 4-9-03. This incident which was never__
__grieved to his Request, was soley unfounded and wrong. He was__
__in training and allowed to make reasonable mistakes. Yet when__
__he made a mistake, he was unjustly disciplined and disqualified. This__
__disciplinary action should not have caused Mr. Lloyd the Job Promotion__
__for which he have merit, ability, and seniority.__

The Adjustment Requested: _____

__The Union and the Aggrieved ~~Request~~ Agree that this grievance is__
__meritorious and Request that he be given the Welder Repair__
__Promotion immediately and be made whole of all lost wages.__

Signed (Bargaining Committee)___Tyrone J. Lloyd___

Date Stamp Disposition | Disposition by Company

(Signed)_____

Date_____    (Company Representative)

# UNADJUSTED GRIEVANCE

(3rd Stage - Plant Committee)

| | | |
|---|---|---|
| **Bldg. or Unit** | C. H. P | **Grievance #**    S1024 |
| **Date of Origin** | 3/12/04     Local 588 | **Date this Grievance** |

**Disposition (Employee Grievance)**

Unsatisfactory

By Foreman

**Disposition (Grievance Record)**

Unsatisfactory

By LRD Rep

| | | | | | |
|---|---|---|---|---|---|
| **Employee Name** | TYRONE J. LLOYD | **Badge #** | 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 | **Shift/Dept** | 1-52 |

**Additional Aggrieved**

**Violation of Article**    IV     **Section**   2(A), 3

**Nature of Grievance**    JOB POSTING - PROMOTION, UNJUST DISCIPLINE

**Statement of Case**    ON 3/12/04 THE AGGRIEVED WAS OVERLOOKED AND DENIED THE JOB PROMOTION OF WELDER REPAIR. INSTEAD IT WAS GIVEN TO E.E. ROSINE (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, SEN. 6/8/92). THIS DENIAL WAS BASED SOLELY ON A DISCIPLINARY ACTION ON 4/9/03. THIS INCIDENT WHICH WAS NEVER GRIEVED TO HIS REQUEST, WAS SOLELY UNFOUNDED AND WRONG. HE WAS IN TRAINING AND ALLOWED TO MAKE REASONABLE MISTAKES, YET WHEN HE MADE A MISTAKE HE WAS UNJUSTLY DISCIPLINED AND DISQUALIFIED. THIS DISCIPLINARY ACTION SHOULD NOT HAVE CAUSED THE AGGRIEVED THE JOB PROMOTION FOR WHICH HE HAS MERIT, ABILITY AND SENIORITY.

**Adjustment Requested**    THE UNION AND THE AGGRIEVED AGREE THAT THIS GRIEVANCE IS MERITORIOUS AND THAT THE AGGRIEVED BE GIVEN THE WELDER REPAIR PROMOTION IMMEDIATELY AND BE MADE WHOLE OF ALL LOST WAGES.

Signed _____

(Chairman)

**Disposition (Plant Committee)**    THE AGGRIEVED EMPLOYEE WAS PROPERLY BYPASSED FOR THIS OPPORTUNITY. SETTLED AND CLOSED. SETTLED 3RD STAGE 12/20/04 - IN FULL AND COMPLETE SETTLEMENT AND WITHOUT PRECEDENT TO ANY ISSUE, THE AGGRIEVED EMPLOYEE WILL RECEIVE AN OPPORTUNITY AS A WELDER REPAIR PERSON. SETTLED AND CLOSED.

Signed _____

(Company Representative)

Date _____

prm F-3

All Grievances Must Be "Date Stamped" By Company Representative On Date Presented

The following individuals are recipients of the Welder Repair Bid and will enter into the new positions on a full time basis, effective Monday, March 29, 2004.

- Eldon Rosine
- Anthony Hernandez
- Steven Brame
- Uriel Olmos
- Willie Wheeler
- David Metzcus
- Dorothy Farris

— J. N. VALENTE    = 8 TOTAL, He was ALLL MM.



H196-01/ND9226
VERSION: 07
PLANT: CHICAGO STAMP

TIMEKEEPING/WORK ORDERS SYSTEM (TWOS)
WEEKLY ACTIVITY LISTING
TRANSACTIONS TO BE SENT FOR PAYEND: 09/19/04

WED, SEP 15, 2004, 12:16 PM
PAGE: 3
SITE: CHICAGO STAMP

*** WEEKLY PROCESSING HAS NOT RUN ***

--- TYPE OF ACTION ---

****** TRANSFERS *******

|  |  |  |  |  |  |  | *** OLD INFORMATION **** |  |  | *** NEW INFORMATION **** |  |  |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DT-ENTER | T/C | SOCIAL | EMPLOYEE NAME | ACT/DATE | EFF/DATE | TMP | DROT # | RATE | OCC-CODE | DROT # | RATE | OCC-CODE | USER-ID |
| 09/15/04 | 41 | -1219 | R C OPOSNOW | 09/15/04 | 09/20/04 |  | 0170-3-1 | 25.930 | 8800590 | 0120-3-1 | 25.930 | 8800590 | ND9226 |
| 09/15/04 | 41 | -6330 | B J OLIVER | 09/15/04 | 09/20/04 |  | 0130-2-2 | 25.930 | 8800590 | 0160-3-1 | 25.930 | 8800590 | ND9226 |
| 09/15/04 | 41 | -4026 | J N WOLFRAMSKI | 09/15/04 | 09/20/04 |  | 0760-2-1 | 25.930 | 0500890 | 0770-3-1 | 25.930 | 0500890 | ND9226 |
| 09/15/04 | 41 | -5491 | C L AIGNER | 09/15/04 | 09/20/04 |  | 0400-2-A | 29.650 | 2571660 | 0300-3-B | 29.650 | 2571660 | ND9226 |
| 09/15/04 | 41 | -4652 | W BEDFORD | 09/15/04 | 09/20/04 |  | 0520-3-2 | 25.405 | 5200370 | 0540-3-1 | 25.405 | 5200370 | ND9226 |
| 09/15/04 | 41 | -9043 | J L VARGAS | 09/15/04 | 09/20/04 |  | 0120-3-1 | 25.930 | 8800590 | 0160-3-1 | 25.930 | 8800590 | ND9226 |
| 09/15/04 | 42 | -5178 | T A PILARCZYK | 09/15/04 | 09/20/04 |  | 0520-3-2 | 25.405 | 5200370 | 0200-2-A | 30.010 | 2573030 | ND9226 |
| 09/15/04 | 42 | -7603 | J A ZAJAC | 09/15/04 | 09/20/04 |  | 0170-3-1 | 25.930 | 8800590 | 0130-3-1 | 25.985 | 8800599 | ND9226 |
| 09/15/04 | 42 | -4782 | W K WILSON | 09/15/04 | 09/20/04 |  | 0130-3-2 | 25.985 | 8800599 | 0200-2-A | 30.010 | 2573030 | ND9225 |
| 9/15/04 | 42 | -6727 | J D GRIFFIN | 9/15/04 | 09/20/04 |  | 0170-2-1 | 25.930 | 8800590 | 0130-2-3 | 25.985 | 8800599 | ND9225 |
| 09/15/04 | 43 | -2792 | D A BRAVO | 09/15/04 | 09/20/04 |  | 0700-3-A | 30.275 | 5070430 | 0750-2-L | 30.010 | 0670300 | ND9225 |

TOTAL    48

**** ADDRESS CHANGE ****

| DT-ENTER | T/C | SOCIAL | EMPLOYEE NAME | PHONE | AREA | ADDRESS | CITY | STATE | ZIPCODE | USER-ID |
|---|---|---|---|---|---|---|---|---|---|---|

TOTAL    1

TOTAL WEEKLY TRANSACTIONS: 57    CHICAGO STAMP    SUPERVISOR'S SIGNATURE

NO. OF ACTIVE EMPLOYEES:    1413

*Note: Above transactions preceded by an !*!, such as *VA, identify Resend transactions.

*** END OF REPORT H196-01 ***

*** END OF REPORTS H196-01 AND H196-02 ***

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2008-03544 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.)<br>**Tyrone J. Lloyd** | Home Phone (Incl. Area Code)<br>**(708) 748-9165** | Date of Birth<br>**02-19-1965** |
|---|---|---|

| Street Address<br>**2524 Athens Rd., Olympia Fields, IL 60461** | City, State and ZIP Code |
|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>**FORD MOTOR COMPANY** | No. Employees, Members<br>**500 or More** | Phone No. (Include Area Code)<br>**(708) 757-5700** |
|---|---|---|

| Street Address<br>**1000 East Lincoln Highway, Chicago Heights, IL 60411** | City, State and ZIP Code |
|---|---|

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Street Address | City, State and ZIP Code | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **09-01-2004**   Latest **11-30-2007**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began my employment with the above named Respondent on August 26, 1991. My current position is Fork Driver. I engaged in protected activity. On or about November 2007, I was notified I would not be promoted.

I believe that I have been retaliated against, in violation of Title VII of the Civil Rights Act of 1964, as amended.

RECEIVED EEOC

MAR 0 3 2008

CHICAGO DISTRICT OFC

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Mar 03, 2008**     Charging Party Signature<br>Date | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: Tyrone J. Lloyd<br>2524 Athens Rd.<br>Olympia Fields, IL 60461<br><br>CERTIFIED MAIL 7000 1670 0012 6742 8025 | From: **Chicago District Office**<br>**500 West Madison St**<br>**Suite 2800**<br>**Chicago, IL 60661** |

☐ On behalf of person(s) aggrieved whose identity is
_CONFIDENTIAL (29 CFR §1601.7(a))_

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2008-03544 | Luis Rodriguez,<br>Investigator | (312) 353-0893 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other _(briefly state)_

### - NOTICE OF SUIT RIGHTS -
_(See the additional information attached to this form.)_

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt **of this notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)

_John P. Rowe_

**John P. Rowe,**
**District Director**

3-11-08

_(Date Mailed)_

cc: **FORD MOTOR COMPANY**

8-26-08

-ON 8-20-08, JACK P. KEEPS COMING UP TO
ME ON 8-LINE AND WANTING ME TO GIVE OUT
Z-13 RACKS TO TOW DRIVERS (T. MILLER) FROM
LINE 137 IN ASSEMBLY. I TOLD HIM OK AS
SOON AS I GET A CHANCE. I'M ON 8-LINE BY
MYSELF. I TOLD HIM TO GET SMOKEY OR MCGEE
TO GIVE THEM OUT RACKS, THAT IS THEIR AREA.
HE KEPT COMING UP TO ME TELLING ME THAT IS
ANOTHER OF MY WORK ASSIGNMENTS ALONG WITH
1 THRU 13 LINE AND HARRASSING ME TO DO IT.
I TOLD T. MILLER TO ASK ONE OF THOSE GUYS
TO LOAD HIM UP, HE SAID OK! ON 8-21-08,
JACK GAVE ME A DIRECT ORDER TO GO TO LINE
210 IN ASSEMBLY AND CHANGE OUT SOME RACKS.
I TOLD HIM I THOUGHT BRIAN WAS MY
SUPERVISOR AND HE TOLD ME TO GET BACK TO
8-LINE. HE SAID NO, I AM YOUR BOSS AND
IF I WANT TO, I CAN FILE A GRIEVANCE.
I ASKED HIM AGAIN WHAT EXACTLY HE
WANTED ME TO DO ON LINE 210 AND HE SAID
YOU KNOW WHERE IT IS. YOU'RE THE ONE
WITH THE SENIORITY. ALSO BRIAN M. SCREAMED
AT ME AND TOLD ME, WHERE I WANT YOUR
ADVICE, I'LL ASK FOR IT. — HE IS GIVING
ME AN UNSURMOUNTABLE WORKLOAD (MULTIPLE
WORK ASSIGNMENTS) AND HARRASSING ME
TO COMPLETE THEM.

HE ALSO CHANGED MY WORK ASSIGNMENT
ON C-AISLE; AS WELL AS USED SENIORITY AS
A FACTOR TO KEEP MOVING ME OUT OF MY
DEPARTMENT (53) TO (52) DEPARTMENT — WHICH
CAUSED ME TO MOVE TO (52) DEPARTMENT (K-AISLE
PRESSROOM).

Tyrone Lloyd
* Tyrone J Lloyd  8-26-08